**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| **FLAGSTAR FINANCIAL & LEASING, LLC f/k/a Signature Financial, LLC,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **Case No.:** |
| **INLAND TRANSPORTATION LTD., an Illinois corporation, and ULUGBEK KUCHKAROV, an individual,** | ) ) ) ) | |
| **Defendants.** | ) ) | |

## COMPLAINT

Plaintiff, Flagstar Financial & Leasing, LLC f/k/a Signature Financial, LLC (hereinafter referred to as "Plaintiff"), for its Complaint against Defendants, Inland Transportation Ltd. (hereinafter referred to as "Inland") and Ulugbek Kuchkarov (hereinafter referred to as "Guarantor," and together with Inland, the "Defendants"), states as follows:

### Nature of the Action

1.     This is an action to recover money damages for breach of contract and a breach of personal guaranty, as well as replevin/possession of Plaintiff's Collateral, as defined herein.

### The Parties

2.     Plaintiff is a New York limited liability company organized and existing under the laws of the State of New York and has a principal place of business at 100 Duffy Avenue, Suite 402, Hicksville, New York 11801.

3.     Plaintiff's sole member is Flagstar N.A.  Flagstar N.A.'s main office is located in the State of New York.

4.    Inland is a corporation, organized and existing under the laws of the State of Illinois, with an office for the transaction of business at 3832 Rosada Drive, Naperville, IL 60564.

5.    Upon information and belief, Guarantor is an individual maintaining a residence at 3832 Rosada Drive, Naperville, IL 60564.

6.    Upon information and belief, Guarantor was and remains the president of Inland.

**Jurisdiction and Venue**

7.    This is a civil action over which this Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a) as this action is between citizens of different States and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

8.    Venue is proper in this district by virtue of the contractual agreement between Plaintiff and Defendants pursuant to which Defendants expressly consented to the commencement and prosecution of any action concerning the subject contract in this forum.  Defendants also reside and/or do business in this District.

**Facts**

9.    On or about January 29, 2020, Inland, as Borrower, entered into a Commercial Finance Agreement (Contract #93957), thereafter amended on February 5, 2020, (hereinafter "Contract 1") with Engs Commercial Finance Co. ("Engs Commercial"), as Creditor.  Pursuant to Contract 1, Engs Commercial financed Inland's purchase of One 2016 Utility Refrigerated Trailer (S/No. 1UYVS2535GU430514), One 2017 Utility Refrigerated Trailer (S/No. 1UYVS2532HM802019), and One 2013 Utility Refrigerated Trailer (S/No. 1UYVS2539DU541126), with a 2015 Carrier X4-7500 Refrigeration Unit, a 2016 Carrier X4-7500 Refrigeration Unit and a 2012 Carrier X4-2100A Refrigeration Unit (S/Nos RAH91410616, RAU91452716, NAX91297528, respectively) and together with "all additions, replacements,

accessions, accessories, attachments, substitutions, exchanges, improvements, repairs, parts, replacement parts, manuals and reference books…" (the "Contract 1 Collateral") for use in its business operations. A true and accurate copy of Contract 1 is attached as Exhibit 1.

10. Pursuant to Contract 1, Inland agreed to pay Engs Commercial (including any assigns) in forty-eight monthly (48) installments of $2,736.69 each (the "Contract 1 Installment Payments"), beginning on March 5, 2020. Contract 1 at ¶¶3-4.

11. In consideration of the financing provided by Engs Commercial to Inland, Guarantor personally guaranteed all of the payment obligations owed by Inland to Engs Commercial (or its successors or assigns), including, but not limited to the Contract 1 Installment Payments (the "Contract 1 Guaranty"). A true and accurate copy of the Contract 1 Guaranty is attached as Exhibit 2.

12. On or about September 2, 2020, Inland, as Borrower, entered into a Commercial Finance Agreement (Contract #106640), thereafter amended on September 10, 2020 (hereinafter "Contract 2" and together with Contract 1 the "Finance Agreements") with Engs Commercial, as Creditor. Pursuant to Contract 2, Engs Commercial financed Inland's purchase of Two (2) 2021 Freightliner Cascadia (CA125SLP) Sleeper Tractors (S/Nos 3AKJHHDR9MSMR8186, 3AKJHHDR0MSMR8187) together with "all additions, replacements, accessions, accessories, attachments, substitutions, exchanges, improvements, repairs, parts, replacement parts, manuals and reference books…" (the "Contract 2 Collateral" and together with the Contract 1 Collateral the "Collateral") for use in its business operations. A true and accurate copy of Contract 2 is attached as Exhibit 3.

13. Pursuant to Contract 2, Inland agreed to pay Engs Commercial (including any assigns) in sixty monthly (60) installments of $6,014.30 each (the "Contract 2 Installment Payments"), beginning on November 1, 2020.

14. In consideration of the financing provided by Engs Commercial to Inland pursuant to Contract 2, Guarantor personally guaranteed all of the payment obligations owed by Inland to Engs Commercial (or its successors or assigns), including, but not limited to the Contract 2 Installment Payments (the "Contract 2 Guaranty" and together with the Contract 1 Guaranty, the "Guaranties"). A true and accurate copy of the Contract 2 Guaranty is attached as Exhibit 4.

15. To secure repayment of the amount financed by Engs Commercial, by the Finance Agreements, Inland granted Engs Commercial a first priority perfected security interest in the Collateral.

16. By Assignment, dated March 8, 2021, Engs Commercial assigned its rights under the Finance Agreements and its security interest in the Collateral to Plaintiff.

17. By Notice of Assignment, dated March 11, 2024 and March 13, 2024, Inland and Guarantor were provided notice of the assignment of Engs Commercial's rights under the Finance Agreements to Plaintiff. A true and accurate copy of the March 11 and 13, 2024 Notices are attached as Exhibit 5.

18. Upon the occurrence of an event of default, Section 16 of the Finance Agreements provides that Plaintiff may, *inter alia*: (i) accelerate the unpaid balance without notice; (ii) require delivery of the Collateral; (iii) repossess the Collateral without court order; (iv) sell, retain or dispose of the Collateral; (v) sue to enforce performance; (vi) recover interest on the unpaid balance at the rate of the lesser of 12% per annum or the highest rate permitted by law; and (vii) pursue any other right or remedy which may be available to Plaintiff under applicable law.

19.     Pursuant to Section 16 of the Finance Agreements, Defendants agreed to pay Plaintiff's reasonable attorneys' fees and actual costs including repossession, refurbishing of the Collateral and collection costs.

20.     Section 17 of the Finance Agreements further provides that any amount not paid within five (5) days after its due date ("Late Payment") is subject to a late charge equal to the greater of fifty dollars ($50.00) or ten percent (10%) of the Late Payment, but not more than the highest rate allowed by law.

21.     Inland defaulted with respect to its payment obligations under the Finance Agreements by: (i) failing to make the Contract 1 Installment Payments due for the month of April 2024 or any of the Installment Payments due thereafter; and (ii) failing to make the Contract 2 Installment Payment due for the month of January 2024 or any of the Installment Payments due thereafter.

## Claims for Relief

### Count I
### (Breach of Contract 1; Damages)

22.     Plaintiff adopts, incorporates, and realleges Paragraphs 1 through 21 as in for this paragraph, as if the same were fully set forth herein.

23.     The Contract 1 Finance Agreement is a valid and binding contract.

24.     Inland failed to make the monthly payment due in April 2024, with respect to Contract 1, and any subsequent monthly payments, and that failure has now been deemed to be an event of default under Contract 1.

25.     By reason of Inland's failure to make payments when due, Plaintiff accelerated the balance due under Contract 1.

26.     Pursuant to Contract 1, Inland agreed that any past due amounts would carry a default interest rate of 12% per annum.

27.     Plaintiff is entitled to late fees from Inland with respect to each payment it failed to timely make thereunder.

28.     Plaintiff has performed all of its obligations under the Finance Agreement.

**WHEREFORE**, Plaintiff requests the Court enter judgment against Defendant Inland Transportation Ltd. in a sum to be determined but not less than $7,014.34, together with appropriate interest thereon, late charges, the costs and disbursements of this action, and reasonable attorneys' fees, and for such other and further relief the Court deems just and appropriate.

**Count II**
**(Breach of Contract 2; Damages)**

29.     Plaintiff adopts, incorporates and realleges Paragraphs 1 through 21 as in for this paragraph, as if the same were fully set forth herein.

30.     The Contract 2 Finance Agreement is a valid and binding contract.

31.     Inland failed to make the monthly payment due in January 2024, with respect to Contract 2, and any subsequent monthly payments, and that failure has now been deemed to be an event of default of Contract 2.

32.     By reason of Inland's failure to make payments when due, Plaintiff accelerated the balance due under Contract 2.

33.     Pursuant to Contract 2, Inland agreed that any past due amounts would carry a default interest rate of 12% per annum.

34.     Pursuant to Contract 2, Plaintiff is entitled to late fees from Inland with respect to each payment it failed to timely make thereunder.

35.     Plaintiff has performed all of its obligations under the Finance Agreement.

**WHEREFORE**, Plaintiff requests the Court enter judgment against the Defendant Inland Transportation Ltd. in the sum of not less than $298,506.65, together with appropriate interest thereon, late charges, the costs and disbursements of this action, and reasonable attorneys' fees, and for such other and further relief the Court deems just and appropriate.

### Count III
### (Breach of Contract 1 Guaranty)

36.     Plaintiff adopts, incorporates and realleges Paragraphs 1 through 28 as and for this paragraph, as if the same were fully set forth herein.

37.     The Contract 1 Guaranty is a valid and binding contract.

38.     In order to induce Engs Commercial, Plaintiff's predecessor-in-interest, to enter into the Contract 1, Guarantor, in return for good and valuable consideration, executed the personal guaranty  (the "Contract 1 Guaranty"), whereby he absolutely and unconditionally guaranteed the payment and performance of any and all obligations of Inland to Engs Commercial and its assigns, including Plaintiff, with respect to Contract 1, including Contract 1 Installment Payments.

39.     Guarantor is liable for all charges (including attorneys' fees and late fees) which are otherwise due and owing from Inland to Plaintiff pursuant to Contract 1.

40.     Guarantor remains liable to Plaintiff with respect to the Contract 1 Guaranty, in an amount to be determined but not less than $7,014.34, together with appropriate interest thereon, late charges, and reasonable attorneys' fees.

41.     Plaintiff has performed all of its obligations under the Guaranty.

7

**WHEREFORE**, Plaintiff requests the Court enter judgment against the Defendant Ulugbek Kuchkarov in the sum of not less than $7,014.34, together with the appropriate interest thereon, late charges, the costs and disbursements of this action, and reasonable attorneys' fees, and for such other and further relief the Court deems just and appropriate.

### Count IV
### (Breach of Contract 2 Guaranty)

42.   Plaintiff adopts, incorporates and realleges Paragraphs 29-34 as and for this paragraph, as if the same were fully set forth herein.

43.   The Contract 2 Guaranty is a valid and binding contract.

44.    In order to induce Engs Commercial, Plaintiff's predecessor-in-interest, to enter into the Contract 2, Guarantor, in return for good and valuable consideration, executed the personal guaranty  (the "Contract 1 Guaranty"), whereby he absolutely and unconditionally guaranteed the payment and performance of any and all obligations of Inland to Engs Commercial and its assigns, including Plaintiff, with respect to Contract 2, including Contract 2 Installment Payments.

45.   By reason of the Contract 2 Guaranty, Guarantor is liable for all charges (including attorneys' fees and late fees) which are otherwise due and owing from Inland to Plaintiff pursuant to Contract 2.

46.   Guarantor is and remains liable to Plaintiff with respect to the Contract 2 Guaranty, in the amount of not less than $298,506.65, together with appropriate interest thereon, late charges, and reasonable attorneys' fees.

47.   Plaintiff has performed all of its obligations under the Guaranty.

**WHEREFORE**, Plaintiff requests the Court enter judgment against the Defendant Ulugbek Kuchkarov in amounts to be determined but not less than $298,506.65, together with the appropriate interest thereon, late charges, the costs and disbursements of this action, and

8

reasonable attorneys' fees, and for such other and further relief the Court deems just and appropriate.

## Count V
### (Breach of Contract-Possession)

48.    Plaintiff adopts, incorporates and realleges Paragraphs 1-47 as and for this paragraph, as if the same were fully set forth herein.

49.    The Finance Agreements provide that in the event of default, Plaintiff may, without demand or notice of any kind, declare the entire unpaid indebtedness to be immediately due and payable and enter upon the premises where the Collateral is located to take possession of and remove same.

50.    Because Inland has defaulted under the terms of the Finance Agreements, Plaintiff is entitled to immediate possession of the Collateral, together with "all additions, replacements, accessions, accessories, attachments, substitutions, exchanges, improvements, repairs, parts, replacement parts, manuals and reference books…"..

51.    Upon information and belief, the Collateral is being held, detained, and converted by the Defendants in contravention of the rights of Plaintiff.

52.    Specifically, Plaintiff is entitled to a judgment of possession against Defendants for the following Collateral: One 2016 Utility Refrigerated Trailer (S/No. 1UYVS2535GU430514), One 2017 Utility Refrigerated Trailer (S/No. 1UYVS2532HM802019), One 2013 Utility Refrigerated Trailer (S/No. 1UYVS2539DU541126), with a 2015 Carrier X4-7500 Refrigeration Unit, a 2016 Carrier X4-7500 Refrigeration Unit and a 2012 Carrier X4-2100A Refrigeration Unit (S/Nos RAH91410616, RAU91452716, NAX91297528, respectively),  and Two (2) 2021 Freightliner Cascadia    (CA125SLP)    Sleeper    Tractors    (S/Nos    3AKJHHDR9MSMR8186, 3AKJHHDR0MSMR8187) together with "all additions, replacements, accessions, accessories,

attachments, substitutions, exchanges, improvements, repairs, parts, replacement parts, manuals and reference books…"

WHEREFORE, Plaintiff requests this Court enter judgment against the Defendants and awarding Plaintiff possession of the Collateral, specifically One 2016 Utility Refrigerated Trailer (S/No. 1UYVS2535GU430514), One 2017 Utility Refrigerated Trailer (S/No. 1UYVS2532HM802019), One 2013 Utility Refrigerated Trailer (S/No. 1UYVS2539DU541126), with a 2015 Carrier X4-7500 Refrigeration Unit, a 2016 Carrier X4-7500 Refrigeration Unit and a 2012 Carrier X4-2100A Refrigeration Unit (S/Nos RAH91410616, RAU91452716, NAX91297528, respectively), and Two (2) 2021 Freightliner Cascadia (CA125SLP) Sleeper Tractors (S/Nos 3AKJHHDR9MSMR8186, 3AKJHHDR0MSMR8187) together with "all additions, replacements, accessions, accessories, attachments, substitutions, exchanges, improvements, repairs, parts, replacement parts, manuals and reference books…", and for such other and further relief the Court deems just and appropriate.

Dated: February 26, 2025        **FLAGSTAR FINANCIAL & LEASING, LLC f/k/a SIGNATURE FINANCIAL, LLC**

        By:    ___/s/ *Patrick Cooke*_____
                Patrick Cooke, Esq. (ARDC #6229059)
                Swanson, Martin & Bell, LLP
                330 North Wabash Ave., Suite 3300
                Chicago, IL 60611
                Tel. (312) 321-9100
                pcooke@smbtrials.com

# EXHIBIT 1


**ENGS** since 1952
commercial finance co.

## COMMERCIAL FINANCE AGREEMENT

Contract # 93957

This Commercial Finance Agreement together with any Amendment(s), Exhibit(s), Schedule(s), Addendum(s) and/or other attachments (collectively, this "**CFA**") dated as of January 29, 2020 is entered into by and between **Engs Commercial Finance Co.** ("Creditor"), a California corporation having its principal place of business at **One Pierce Place, Suite 1100 West, Itasca, Illinois 60143** and

**INLAND TRANSPORTATION LTD.** ("Borrower"), with a place of business located **746 GENESEE DR, NAPERVILLE, IL 60563** telephone number(s): **407-929-1169 407-929-1169** and email address: **uluq1705@gmail.com**

The use of the word "You," "Your" and "Your Company" in this CFA refers to each of the Borrowers and Co-Borrowers, if any. If more than one Borrower is named in this CFA, the liability of each Borrower shall be joint and several and shall be subject to the terms of Section 20(C). "We," "Us" and "Our" refers to Creditor and its successors and assigns. "Term" shall mean the period starting on the Commencement Date (defined below) and loan expiration.

**1. Equipment Description (include Quantity, Year, Make, Model and Serial No. and/or VIN No.).** The Collateral described below and/or listed on an attached Schedule or Dealer Invoice(s) identified by Creditor for such purpose, including all additions, replacements, accessions, accessories, attachments, substitutions, exchanges, improvements, repairs, parts, replacement parts, manuals and reference books, supplements, upgrades, thereto and thereof, however designated together with any related software license(s), software, as may be modified, corrected, supplemented or enhanced from time to time, and the proceeds thereon, including any and all cash and non-cash proceeds from any source, including but not limited to insurance proceeds (hereinafter collectively referred to as "Collateral"):

| QUANTITY | COLLATERAL DESCRIPTION | VIN # / SERIAL NUMBER |
|---|---|---|
| 1 | 2016 UTILITY 53 X 102 REFRIGERATED TRAILER (Used) | 1UYVS2535GU430514 |
| 1 | 2017 UTILITY 53 X 102 REFRIGERATED TRAILER (Used) | 1UYVS2532HM802019 |
| 1 | 2013 UTILITY 53 X 102 REFRIGERATED TRAILER (Used) | 1UYVS2539DU541126 |
| | WITH A 2015 CARRIER X4-7500 REFRIGERATION UNIT S/N #RAH91410616 | |
| | WITH A 2016 CARRIER X4-7500 REFRIGERATION UNIT S/N #RAU91452716 | |
| | WITH A 2012 CARRIER X4-2100A REFRIGERATION UNIT S/N #NAX91297528 | |

**2. Name and location of "Dealer":** You are solely responsible for the selection of the Dealer and/or manufacturer referenced below:

MIDWEST UTILITY, INC.
15 W. 700 N. FRONTAGE RD, BURR RIDGE, IL 60527
630-789-2700

**3. Itemization of Purchase Price.** Creditor is directed to pay purchase price described below to Dealer, manufacturer and/or other suppliers as follows:

| | |
|---|---|
| **SALE PRICE** (combined price of each unit as itemized on Your invoice(s) submitted for financing, may include: federal excise tax, accessories, attachments, fees, license, title or registration fees, premiums, protection plans or service contracts, services and/or additional charges which may be included below): | **$114,616.00** |
| **CASH DOWN PAYMENT** (if check is payable to Engs Commercial Finance Co., please note any payment in excess of $5,000.00 must be made via cashier's check or wire.): | $5,730.80 |
| **TOTAL NET TRADE-IN:** | $0.00 |
| **TOTAL DOWN PAYMENT** (due at the time of execution): | **$5,730.80** |
| **FEES, CHARGES AND PREMIUMS INCLUDED IN YOUR AMOUNT FINANCED** | |
| SALES TAX: | $0.00 |
| DOCUMENTATION FEE FINANCED: | $795.00 |
| INTERIM CHARGE (provides 45 or more days before next payment date): | $0.00 |
| FLORIDA STAMP TAX: | $0.00 |
| OTHER FEES FINANCED: | |
| **TOTAL FEES/CHARGES FINANCED:** | **$795.00** |
| **TOTAL AMOUNT FINANCED:** | **$109,680.20** |
| **MONTHLY INVOICE FEE** (waived only for electronic payment): | **$10.00** |
| **ADVANCE PAYMENT(S), FEES, CHARGES, TAXES -- DUE AT SIGNING** | |
| 0    ADVANCE PAYMENT(S) OF: | $0.00 |
| **FEES/CHARGES - DUE AT SIGNING (NON-FINANCED):** | |
| **TOTAL FEES, CHARGES, TAXES (NON-FINANCED):** | $0.00 |
| **TOTAL AMOUNT DUE AT SIGNING:** | **$0.00** |

**4. Payment Schedule, Term, Number and Amount of Installment Payments and Installment Due Date:**

| 48 MONTH TERM ("TERM") | | |
|---|---|---|
| INSTALLMENT PAYMENTS: | 48 @ $2,736.69 | |
| **INVOICE DUE DATE AND INSTALLMENT PAYMENT AMOUNT** | | |
| INVOICE DUE DATE: | March 1, 2020 | INVOICE AMOUNT: | $2,736.69 |

**5. NO WARRANTIES:** YOU ACKNOWLEDGE THAT WE ARE NOT THE MANUFACTURER OF THE COLLATERAL NOR THE MANUFACTURER'S AGENT NOR A DEALER THERETO. YOU ARE FINANCING THE COLLATERAL "AS IS" AND WITH ALL FAULTS. WE DO NOT MAKE AND WE HEREBY DISCLAIM ANY WARRANTY OR REPRESENTATION WHATSOEVER, EXPRESS OR IMPLIED, WITH RESPECT TO THE COLLATERAL, INCLUDING, WITHOUT LIMITATION AS TO THE DURABILITY, QUALITY, CONDITION OR SUITABILITY, THE MERCHANTABILITY OF THE COLLATERAL, OR ITS FITNESS FOR ANY PARTICULAR PURPOSE. WE SHALL NOT BE LIABLE FOR ANY LOSS, DAMAGE OR EXPENSE OF ANY KIND CAUSED DIRECTLY OR INDIRECTLY BY THE COLLATERAL OR ITS USE, OPERATION, OR POSSESSION, OR BY ANY DAMAGE WHATSOEVER AND HOWEVER CAUSED. IF THE COLLATERAL DOES NOT OPERATE AS REPRESENTED OR WARRANTED BY THE DEALER OR MANUFACTURER, OR IS UNSATISFACTORY FOR ANY REASON, REGARDLESS OF CAUSE OR CONSEQUENCE, YOUR ONLY REMEDY, IF ANY, SHALL BE AGAINST THE DEALER OR MANUFACTURER OF THE COLLATERAL AND NOT AGAINST US. NO DEFECT, DAMAGE OR UNFITNESS OF THE COLLATERAL FOR ANY PURPOSE SHALL RELIEVE YOUR OBLIGATION TO MAKE PAYMENTS OR RELIEVE YOU OF ANY OTHER OBLIGATION UNDER THIS CFA. TO THE EXTENT PERMITTED BY THE MANUFACTURER OR DEALER AND PROVIDED NO DEFAULT HAS OCCURRED AND IS CONTINUING HEREUNDER, WE ASSIGN ALL MANUFACTURER'S AND DEALER'S WARRANTIES TO YOU. No defect or unfitness of the Collateral, and no failure on the part of the manufacturer, Dealer or the shipper of the Collateral to deliver the Collateral or any part thereof to You shall relieve You of the obligation to pay any Installment Payment or any other obligation hereunder. We shall have no obligation in respect of the Collateral and shall have no obligation to install, test, adjust or service the Collateral. You shall only look to persons other than Creditor such as the manufacturer, Dealer or carrier thereof should any item of Collateral for any reason and in any way be defective.

**6. Loan:** You agree to finance the Collateral together with all affixed parts, attachments and accessories, pursuant to the Payment Schedule and Itemization of Purchase Price Sections reflected above and subject to the terms of this CFA. You have selected the Collateral, Dealer, and/or manufacturer based upon Your own judgment and disclaim any reliance upon any statements or representations made by Us. You agree to indemnify and hold Us harmless and to defend Us against any claim of liability by Dealer. We may in Our sole discretion, accept a photocopy, electronically transmitted facsimile, electronic version or other reproduction of this CFA (a "Counterpart") as the binding and effective record of this CFA whether or not an ink-signed copy hereof is also received by Us from You, provided, however, that if We accept a Counterpart as the binding and effective record hereof, the Counterpart acknowledged in writing by Us shall constitute the record hereof. You represent to Us that the signature that appears on the Counterpart that is transmitted by You to Us in any manner described above is intended by You to authenticate the Counterpart notwithstanding that such signature is electronic, facsimile, electronic version or a reproduction and You further agree that such Counterpart received by Us, shall, when acknowledged in writing by Us, constitute an original document for the purposes of establishing the provisions thereof and shall be legally admissible under the best evidence rule and binding on and enforceable against You. If We accept a Counterpart as the binding and effective record hereof only such Counterpart acknowledged in writing by Us shall be deemed an original and to the extent that this CFA constitutes chattel paper, perfection of a security interest by possession may only be accomplished by possession of the Counterpart that bears Our ink-signed or stamped acknowledgement. This CFA may be executed in counterparts, each of which when so executed shall be deemed to be an original and all of which when taken together shall constitute one and the same agreement.

**7. Security Interest:** You hereby grant to Us a first priority perfected security interest under the Uniform Commercial Code ("UCC") in the Collateral, whether now owned or hereafter acquired, whether used as equipment or inventory, and all replacements thereof and all receivables, rebates, discounts, credits, payments, refunds, proceeds, all accounts, general intangibles, contract rights, insurance proceeds, instruments, proceeds and products and chattel paper relating to the foregoing Collateral including, without limitation, the rights to all payments relating to or arising out of the sale, lease, rental or other disposition of the foregoing, all books and records at any time evidencing or related to the foregoing and all software or other intellectual property used in connection with the Collateral. Such security interest is granted to secure payment and performance by You of Your obligations hereunder. You further grant to Us a security interest in the Collateral (separate and distinct from and subordinate only to the security interest granted to Us above) to secure the payment and performance of all now existing or hereafter arising debts, liabilities and obligations of Yours of every kind and character, whether direct, indirect, absolute, contingent, primary, secondary, or otherwise to Us, whether under this CFA or any other agreement, and whether due directly or acquired by assignment, transfer, renewal, extension, refinancing or other means ("Liabilities"), provided, however, that such cross-collateralization shall only

benefit Us and those of Our assignees who have been assigned both this CFA and such other debts, liabilities or obligations.

**8. Ordering Collateral, Delivery and Acceptance;** If You entered into any purchase or supply contract with any Dealer, manufacturer or supplier for the Collateral, You hereby assign to Us all of Your rights under such purchase or supply contract, but none of Your obligations, except for the obligation to pay for the Collateral if it is accepted by You according to the terms of this CFA. The occurrence of the Commencement Date (as defined below) shall be conclusive evidence that You have inspected, tested and confirmed Your satisfaction with the Collateral, accepted the Collateral on an "AS-IS, WHERE-IS AND WITH ALL FAULTS" basis for all purposes hereunder, and directed Us to make payment for Your acquisition of the Collateral as provided herein.

**9. Borrower Representations and Warranties:** You represent and warrant to Us that as of the date on which You execute this CFA and the Commencement Date: (i) if You are a partnership, corporation, limited liability company or other legal entity, the execution and delivery of this CFA and the performance of Your obligations hereunder and thereunder have been duly authorized by all necessary action on Your part and are not in contravention of, and will not result in a breach of, any of the terms of Your charter, by-laws, articles of incorporation or other organizational documents or any loan agreements or indentures of Yours, or any other contract, agreement or instrument to which You are a party or by which You are bound; (ii) the person signing this CFA on Your behalf is duly authorized, and this CFA has been duly authorized, executed and delivered; (iii) this CFA is Your legal, valid and binding agreement enforceable against You in accordance with its terms, and the execution, delivery and performance of this CFA is not in contravention of or result of any breach of any loan agreements, indentures of Yours or any other contract, agreement or instrument to which You are a party or by which You are bound; (iv) Your exact legal name as it appears on Your charter or other organizational documents, including as to punctuation and capitalization, and Your jurisdiction of incorporation or formation, and principal place of business or chief executive office are as set forth in the heading of this CFA; (v) You are duly organized, validly existing and in good standing under the laws of the state of Your incorporation or formation and are duly qualified and authorized to transact business in, and are in good standing under the laws of, each other state in which the Collateral is or will be located or otherwise necessary for the conduct of Your business; (vi) there has been no change in Your name, or the name under which You conduct business, within the one (1) year preceding the date hereof except as previously reported in writing to Us; (vii) You have not moved Your principal place of business or chief executive office, or have not changed the jurisdiction of Your organization, within the one (1) year preceding the date hereof except as previously reported in writing to Us; (viii) all information provided by You to Us in connection with this CFA is true and correct including the financial information which You have submitted or will submit in connection with this CFA; (ix) there are no suits pending or threatened against You or any Guarantor of Your obligations (each, a "Guarantor") which, if decided adversely, might materially adversely affect Your or such Guarantor's financial condition, the value, utility or remaining useful life of the Collateral, the rights intended to be afforded to Us hereunder or under any guarantee or Your ability or any Guarantor's ability to perform its obligations under the CFA or any document delivered in connection herewith; and (x) none of You or any Guarantor, any of Your or any Guarantor's subsidiaries nor any director or officer of any of the foregoing is an individual or entity that is owned or controlled by persons that are Blocked Person(s). "Blocked Person" means any person or entity (A) that is now or at any time on a list of Specially Designated Nationals issued by the Office of Foreign Assets Controlled ("OFAC") of the United States Department of the Treasury or any sectoral sanctions identifications list; (B) whose property or interests in property are blocked by OFAC or who is subject to sanctions imposed by law, including any executive order of any branch or department of the United States government; or (C) otherwise designated by the United States or any regulator having jurisdiction or regulatory oversight over Us or our financing source, to be a person with whom We or they are not permitted to extend credit to or with regard to whom a buyer relationship may result in penalties against Us or limitations on a creditor's ability to enforce a transaction.

**10. Payments and Prepayment:** The "Commencement Date" of this CFA shall be the earlier of: (i) the Contract Date set forth above on this CFA, or (ii) the date We pay Dealer for the Collateral. You agree as of the Commencement Date, the Collateral is subject to this CFA. The Interim Charge set forth above is an amount equal to 1/30th of the monthly Installment Payment (set forth above) multiplied by the number of days between the Commencement Date and the date that is one month prior to the Invoice Due Date. You acknowledge that the interest rate used to compute the Interim Charge is higher than the implicit interest rate used to calculate the Installment Payments during the Term. All Installment Payments are due and payable in arrears on or before the Invoice Due Date (and on the same day of each subsequent month during the Term). Your receipt of an invoice is not a condition of Your obligation to pay Your Installment Payments or other charges when due. If the Installment Payment includes a cost of service and/or maintenance, You acknowledge that such inclusion is for Your convenience. You will not assert against Us any claim, defense, set-off or demand for compensation for any reason, including those

which You might have under any service or maintenance contract relating to the Collateral. We reserve the right to adjust Your Installment Payment, reflected above, by up to 10% to reflect changes in the final invoice of the Dealer or manufacturer, as applicable. Any such adjustment in the final invoice of the Dealer or manufacturer shall be reflected on a subsequent invoice to be sent to You within thirty (30) days. **Borrower's obligation to repay all amounts payable by Borrower as set forth herein is absolute, unconditional and irrevocable, and all such amounts shall be paid by Borrower in accordance with the terms hereof without any abatement, reduction, setoff or defense of any kind.** You agree that upon termination of any financed warranty or insurance policy(ies), any premium, rebate or refund will be applied to Your account, at Our option: (i) toward outstanding charges, (ii) future installments, or (iii) by adjusting Your remaining Installment Payments to reflect such rebate. However, You will remain obligated to pay any deficiency charges relating to such warranty or insurance policy(ies) after rebate or refund is applied. You may prepay Your obligations under this CFA in whole but not in part at any time upon prior written notice to Us by paying Us, in cash, the unpaid principal balance, plus $250, plus one percent (1%) of the unpaid principal balance for each 12-month period remaining on this CFA ("Prepayment"). A partial 12-month period remaining shall be deemed a full 12-month period remaining for purposes of calculating the Prepayment amount. TIME IS OF THE ESSENCE WITH RESPECT TO THE OBLIGATIONS OF BORROWER UNDER THIS AGREEMENT.

**11. Use and Location:** You agree that the Collateral will be used for its intended purpose, and that the loan contemplated hereby and Your use of the Collateral will be solely for commercial and business purposes and not for personal, family or household purposes. You shall NOT use the Collateral to haul or transport any hazardous materials or products. You will not transport persons for hire without our written consent. The Collateral will be and shall remain personal property and, at Your expense, You shall keep the Collateral free from any and all liens and encumbrances other than any liens or encumbrances in favor of Us. You shall mark and identify the Collateral with all information and in such manner as We or Our assigns may request from time to time and replace promptly any such markings or identifications which are removed, defaced or destroyed. You shall give Us immediate notice of any attachment or other judicial process, liens or encumbrances affecting the Collateral. You shall keep the Collateral at the Borrower's address or Collateral Location referenced herein. You may not store the Collateral at any other location without Our prior written consent. Borrower shall not part with possession or control of the Collateral or suffer or allow to pass out of its possession or control any item of Collateral.

Collateral Location (if different enter below):
3485 IL-126, OSWEGO IL 60543

**12. Maintenance, Installation:** You are responsible for any installation costs and You agree to keep the Collateral, at Your cost, in good repair and working order and pay all costs relating to the use and operation of the Collateral. Except for upgrades that do not reduce the value or marketability of the Collateral and as required to comply with this Section, You shall not make any alterations, additions or improvements to the Collateral without Our prior written consent, except that You shall make all modifications and improvements thereto in accordance with any manufacturer's specifications and as otherwise required by law. All additions and improvements made to the Collateral shall immediately become the property of Creditor and be deemed part of the Collateral for all purposes and shall not be removed if removal would impair the Collateral's economic value or functional utility. Any modifications shall be made in accordance with the recommendations and standards set by the manufacturer of the parts or devices included in such modification. You shall be solely responsible for, and shall indemnify, defend and hold Us harmless from and against, any and all claims resulting from the breach of this Section.

**13. Insurance; Indemnification:** You agree at all times, at your own expense, to: (i) insure the Collateral against loss, theft or damage from every cause whatsoever in an amount not less than the Total Amount Financed reflected above and on such terms as specified in Our Insurance Request Form, (ii) maintain comprehensive general liability collision insurance insuring against liability for property damage, death and bodily injury resulting from Collateral, as specified in our Insurance Request Form, (iii) name Us and/or Our assigns on the forgoing policy(ies) as sole Loss Payee; and (iv) maintain such coverage from an insurance carrier or carriers acceptable to Us. All policies shall contain clauses naming Us and Our assignees "Loss Payee" and requiring the insurer to furnish Us with at least thirty (30) days prior written notice of any material change, cancellation, or non-renewal of coverage and stating that coverage shall not be invalidated against Us or Our assigns because of any violation of any condition or warranty contained in any policy or application therefor by Borrower or by reason of any action or inaction of Borrower. You agree to inform Us immediately in writing of any notices from, or other communications with, any insurers that may in any way adversely affect the insurance policies being maintained pursuant hereto or of any insurance claims. No insurance shall be subject to any co-insurance clause. You agree to provide Us with certificates or other evidence of insurance acceptable to Us, before the Term begins, and

annually during the Term, and whenever there is a change in carrier or other change in the insurance required hereby. If at any time You fail to keep the Collateral properly insured in accordance with Our requirements or fail to deliver to Us a valid and acceptable certificate of insurance reflecting such insurance as being in effect, it will be deemed as a default hereunder. Regardless of the existence of any applicable insurance, You agree to indemnify and hold Us, Our employees and affiliates harmless from all suits, claims, demands, losses, damages, judgments, obligations, actions, suits and all legal proceedings, and any and all costs and expenses in connection therewith, including, attorneys' fees and liabilities arising out of, or in any manner connected with, or resulting directly or indirectly from the Collateral, including, without limitation, the manufacture, purchase, loan, financing, selection, ownership, delivery, rejection, non-delivery, transportation, possession, use, storage, operation, condition, maintenance, repair, return or other disposition of the Collateral or with this loan, including without limitation, claims for injury to or death of persons and for damage to property, whether arising under the doctrine of strict liability, by operation of law or otherwise, and to give Creditor prompt notice of any such claim or liability. If You fail to keep the Collateral properly insured, then, in addition to the other remedies available hereunder, We have the right, but not the obligation, to obtain such insurance for the Term at Your expense and if so obtained, We will add to Your Installment Payments due hereunder and You will pay to Us Our costs of obtaining such insurance and any customary fees or charges of Ours or Our designees associated with such insurance. You also agree to pay an administrative fee equal to 10% of Your Installment Payment for each 30-day period during the Term the Collateral is uninsured or remains improperly insured. You understand that this fee will not be utilized to obtain insurance on Your behalf and any insurance We purchase as permitted hereby will benefit Us and not You and may be more expensive than insurance you could purchase by compliance with the terms hereof. Nothing in this CFA nor Our actions hereunder, including without limitation Our assessment of administrative fees or other amounts permitted hereby, shall mean that We are selling insurance or providing insurance coverage. The fees and other amounts payable hereunder do not necessarily reflect actual costs or exposures and may result in additional profit to Us. You may, upon not less than thirty (30) days express written notice to Us and delivery to Us of satisfactory insurance certificates or other satisfactory evidence of insurance complying with the terms of this CFA, terminate any insurance or related charges pursuant to this Section. Your obligations under this Section shall survive termination or expiration of this CFA.

**14. Taxes and Fees:** You agree to pay when due or reimburse Us for all excise and other taxes, fees, fines, penalties and internal administrative costs relating to use or ownership of the Collateral or to this CFA, including but not limited to documentary stamp taxes, now or hereafter imposed, levied or assessed by any federal, state or local government or agency. If any federal, state, county or local government or agency requires any taxes, charges or fees to be paid in advance, and We pay such taxes, charges or fees, We reserve the right to adjust the remaining payments, so that We may recover any payment of such taxes, charges or fees. Any such adjustment shall be reflected on Your subsequent invoice(s). You agree to comply with all registration, filing, licensing, tax and title laws applicable to the Collateral and will be responsible for any fees or penalties for failure to do so on a timely basis. Your obligations under this Section shall survive termination or expiration of this CFA.

**15. Titled Equipment:** Any Collateral that is subject to title and/or registration laws shall be titled and registered as required by law within ten (10) days of Your receipt of the Collateral, listing Us as sole lienholder. Failure to do so will be deemed an event of default hereunder. **In addition, You agree to pay an administrative fee equal to 10% of Your Payment for each additional 30-day period during that the Collateral remains unregistered or improperly titled or registered. You understand that this fee will not be utilized to pay any taxes or registration fees on Your behalf.** The fees and other amounts payable hereunder do not necessarily reflect actual costs or exposures and may result in additional profit to Us.

**16. Default and Remedies:** Each of the following, and any other events or circumstances herein provided to be a Default, is a "Default" under this CFA: (i) failure to pay when due any amount due under this CFA or any other amount due and owing by You to Creditor; (ii) Your breach or failure to perform any other covenants and promises under this CFA or any other agreement entered into by You with Creditor; (iii) the death of any individual Borrower, or partner of Borrower if Borrower is a partnership, or any Guarantor; (iv) Your failure to pay indebtedness when due to other lenders; (v) any attempt by You to sell, rent or lease the Collateral or any interest therein to anyone other than Us or a Co-Borrower named herein (and any such attempt shall be void); (vi) allowing anyone other than You to operate the Collateral; (vii) You or any Guarantor makes an assignment for the benefit of creditors, or becomes insolvent; (viii) You or any Guarantor threatens to cease or ceases to do business as a going concern, seeks any arrangement or compromise with creditors, dissolves, or takes any actions regarding the cessation or winding up of Your business affairs or the business affairs of any Guarantor; (ix) any representation or warranty made by You herein or in any document or certificate furnished by You to Us either directly or indirectly is incorrect in any material respect at any time; (x) You or any Guarantor files for bankruptcy or enters into any reorganization proceeding; (xi)

any proceeding in bankruptcy, receivership, liquidation or insolvency is commenced against You or Your property or any Guarantor or their property; (xii) any Guarantor fails to pay or perform any obligation to Us, or fails to observe or perform any term, condition, covenant, representation or warranty contained in any agreement made by such Guarantor in favor of Us; and/or (xiii) We believe, acting reasonably and in good faith, that the prospect of payment to Us under this CFA is impaired. Upon Default and at any time thereafter, at Our election, We may (a) accelerate the unpaid balance due hereunder, without protest, presentment, demand or notice (including but not limited to notice of intent to accelerate and notice of acceleration), all of which You waive, and require that You pay, as reasonable liquidated damages for loss of bargain, the "Accelerated Balance"; (b) require that You deliver to Us the Collateral; (c) repossess the Collateral or disable the Collateral without court order and You will not make any claims against Us for damages or trespass or any other reason; (d) sell the Collateral by public or private sale, retain the Collateral in full or partial satisfaction of Your obligations hereunder, or otherwise dispose of the Collateral in any manner We choose, free and clear of any of Your claims or rights, without notice except to the extent required by law, and if notice is required such requirement shall be met if notice is given at least ten (10) days before the sale or other disposition; (e) sue to enforce Your performance hereof; (f) recover interest on the unpaid balance of Creditor's Loss plus any other amounts recoverable hereunder from the date it becomes payable until fully paid at the rate of the lesser of 12% per annum or the highest rate permitted by law; and/or (g) pursue any right or remedy available to Us at law, or in equity, including any rights or remedies under the UCC. The "Accelerated Balance" will be equal to the total of (x) all accrued and unpaid amounts then due and owing hereunder, and (y) the sum of the remaining Installment Payments scheduled to be paid hereunder discounted by the rate of 1.5% per annum, and (z) any recovery by Us in excess of unamortized Total Amount Financed (as defined above) constituting make-whole premium, compensation for loss of bargain and unamortized overhead and closing costs and other compensation and not a penalty as You expressly agree. In addition, You agree to pay Our reasonable attorneys' fees and actual costs including repossession, refurbishing the Collateral and collection costs, and all non-sufficient funds charges and similar charges, and You shall deliver the Collateral (at Your expense) to a location designated by Us. Each remedy shall be cumulative and in addition to any other remedy referred to above or otherwise available to Us at law or equity. No express or implied waiver of any default shall constitute a waiver of any of Our other rights. Our election to exercise any remedy available hereunder, at law or in equity, shall not prevent Us from exercising any other available remedy, whether concurrently or at a later time. Upon default and at any time thereafter, at Our election, We can accelerate, in accordance with actual law, the entire unpaid balance due hereunder and require that You pay, as reasonable liquidated damages for loss of bargain, the "Accelerated Balance." The Accelerated Balance will be equal to the total of (i) all accrued and unpaid amounts then due and owing hereunder, and (ii) the sum of the remaining Payments scheduled to be paid hereunder discounted by 1 ½ percent, and will be immediately due and payable, without protest, presentment demand or notice (including but not limited to notice of intent to accelerate and notice of acceleration), all of which You waive. We can also pursue any of the remedies available to Us under the UCC or any other law. In addition, You agree to pay Our reasonable attorneys' fees and actual costs including repossession, refurbishing the Collateral and collection costs, and all non-sufficient funds charges and similar charges, and You shall deliver the Collateral (at Your expense) to a location designated by Us.

**Louisiana Default Remedies under Chapter 9 of Louisiana Law.** This subsection shall apply to any of the Collateral (including any Collateral proceeds) that, at any time, is or may be located in the State of Louisiana, or otherwise be subject to the application of Louisiana law in any respect (the "Louisiana Collateral"). Upon the occurrence of any event of default, We shall have the following rights and remedies with respect to the Louisiana Collateral, which rights and remedies are in addition to, and not in lieu or limitation of, any other rights and remedies that may be available to Us under this CFA, under Chapter 9 of the Louisiana Commercial Laws, under the laws in effect in any state other than Louisiana, or at law or equity generally.

For purposes of foreclosure under Louisiana executory process procedures, You confess judgment and acknowledge to be indebted unto and in favor of Us up to the full amount of Your Liabilities plus interest, costs, expenses, attorney's fees, and other fees and charges. To the extent permitted under applicable Louisiana law, You additionally waive (a) the benefit of appraisal as provided in Articles 2332, 2336, 2723 and 2724 of the Louisiana Code of Civil Procedure and all other laws with regard to appraisal upon judicial sale; (b) any right to receive demand for payment from the court prior to the court issuing a writ of seizure and sale; (c) the notice of seizures as provided under Articles 2293 and 2721 of the Louisiana Code of Civil Procedure; and (e) all other benefits provided under Articles 2331, 2722 and 2723 of the Louisiana Code of Civil Procedure and all other Articles not specifically mentioned above.

Should any of the Louisiana Collateral be seized as an incident to an action, You agree that the court issuing any such order shall, if requested by Us, appoint Us or any person or entity named by Us at the time such seizure is requested, or at any time thereafter, as keeper of the Louisiana Collateral as

provided under La. R.S. §9:5136, et seq. You agree to pay the reasonable fees and expenses of such keeper, which compensation to the keeper shall also be a part of the secured Liabilities under this CFA.

**17. Late Charge:** If You fail to pay any sum due under this CFA within five (5) days after its due date ("Late Payment"), You agree to pay Us a late charge (as reasonable liquidated damages and not as a penalty) equal to, the greater of $50.00 or 10% of the Late Payment not to exceed the maximum amount permitted by applicable law ("Late Charge"). If any check or funds transfer request for any payment is returned to Us unpaid, You shall pay Us a service charge of $55 for each such returned check or request

**18. Assignment and Inspection:** YOU HAVE NO RIGHT TO SELL, TRANSFER, SUBLEASE, ASSIGN THIS CFA OR THE COLLATERAL OR TO GRANT A SECURITY INTEREST IN OR OTHERWISE ENCUMBER THE COLLATERAL OR THIS CFA. We may sell, transfer, assign, or encumber this CFA or the related Collateral without notice or consent. You agree that if We sell, transfer, assign, or encumber this CFA or the related Collateral, the assignee will have the rights and benefits that We assign to the assignee and will not have to perform any of Our obligations. You agree that the rights of the assignee will not be subject to any claim, defense or set-off that You may have against Us. We and Our agents and representatives shall have the right at any time during regular business hours to inspect the Collateral and for that purpose to have access to the location of the Collateral without any claims for trespass or damages.

**19. Risk of Loss.** You hereby assume and shall bear the entire risk of loss, theft, damage and destruction of the Collateral from any cause whatsoever commencing upon the earlier of the delivery of the Collateral to You or the date We advance any portion of the Amount Financed hereunder and no loss, theft, damage or destruction of the Collateral shall relieve You of the obligation to make scheduled Installment Payments or any other obligation under this CFA, and this CFA shall remain in full force and effect except as provided herein. You shall notify Us in writing within five (5) days of any item of Collateral becoming lost, stolen or damaged and of the circumstances and extent of such damage. If damage of any kind occurs to any item of Collateral, You, at Our option, shall at Your expense (a) place the item in good repair, condition or working order, or (b) if the Collateral cannot be repaired or is lost, stolen, destroyed, rendered permanently unfit for use for any reason, or in the event of condemnation or seizure of an item of Collateral, pay to Us an amount equal to the sum of the following: (1) all amounts payable by You hereunder due but unpaid as of such date plus (2) the amount of all remaining unpaid Installment Payments hereunder not yet due as of such date, discounted from the respective dates payments would be due at the Discount Rate as defined below, "Discount Rate" means (i) the rate set forth for the United States Treasury Bond or Note having the closest term to (but not longer than) the original term of this loan, as set forth in the Wall Street Journal two (2) business days prior to the Commencement Date, (ii) the rate set forth for the United States Treasury Bond or Note having the closest term to (but not longer than) the remaining term of this CFA, as set forth in the Wall Street Journal two (2) business days prior to the date of calculation of this amount, or (iii) 1.5%, whichever is lowest. If a rate referred to in the preceding clauses "(i)" or "(ii)" is not published in the Wall Street Journal, such rate shall be taken from a reputable source selected by Us.

**20. Borrower's Covenants.** You shall not sell, transfer or assign any material portion of Your assets; allow a controlling interest in Borrower to be sold, transferred or assigned to any person(s) or entity(ies) other than those who hold a controlling interest as of the date hereof, whether by merger, sale or otherwise; allow a Blocked Person to have an ownership interest in or control of Borrower; enter into any merger or reorganization in which You are not the surviving entity; or unless You shall have given Us not less than thirty (30) days' prior written notice change (i) Your name or business address from that set forth above, and, if an individual, Your state of residence, (ii) the state under whose laws You are organized as of the date hereof, or (iii) the type of organization under which You exist as of the date hereof.

(B) Authorized Signer Covenant. The signer(s) who execute this CFA and any other ancillary documents are duly authorized by Borrower and should any signer(s) later be found to be unable to bind Borrower, said signer(s) shall be personally liable for any obligations incurred under the CFA and any ancillary documents, in addition to the liability of the Borrower.

(C) Co-Borrower Covenants. If there is more than one Borrower executing this CFA, each undersigned Borrower shall be designated as Borrower hereunder and all documents executed in connection herewith. Each Borrower agrees: (i) all obligations shall be joint and several and each Borrower shall be individually responsible for fulfilling all obligations of Borrower hereunder; (ii) any Default by any Borrower shall be a Default by each other Borrower; (iii) the mutual understanding reached by each Borrower in this regard is consideration for each Borrower's execution hereto; (iv) each Borrower will receive the benefit of the financing made hereunder and We would not otherwise enter into or provide financing under any Agreement without each Borrower's execution; and (v) We shall be entitled to pursue all rights and remedies hereunder against each Borrower upon any Default by any Borrower. All representations, covenants, agreements and obligations imposed on each Borrower shall be binding on each other Borrower and the act of any Borrower shall bind all other Borrowers and We shall be authorized to rely, without investigation, on the authority of any

Borrower to give any notice, grant any consent and Our notice to one Borrower shall suffice as notice to all Borrowers. Each Borrower's obligations shall not be affected by any action taken or not taken by Us against any other Borrower, Guarantor(s) or the Collateral for any reason whatsoever, including: (i) any action by any Borrower, (ii) any exercise or non-exercise of any right or remedy against any Borrower, (iii) any voluntary or involuntary bankruptcy, insolvency, reorganization or similar proceeding by any other Borrower.

**21. Consent to Jurisdiction and Venue:** You hereby consent to the jurisdiction of any local, state, or federal court located within the State of Illinois and waive any objection based on improper venue or forum non conveniens to the conduct of any action or proceeding in any such court. You further waive formal service of process and consent that all service of process may be made by mail or messenger directed to You at the address above and that service so made shall be deemed to be completed upon the earlier of actual receipt, or three (3) days after service of process addressed to You to at Your address set forth above is deposited in the mail or one (1) day after service of process is delivered to a messenger or overnight courier service for delivery to You. You acknowledge that you have an option to consult with counsel of your choice regarding this CFA and that it shall not be construed against either of us by reason of draftsmanship.

**22. GOVERNING LAW:** THE AGREEMENT SHALL BE CONSTRUED IN ALL RESPECTS IN ACCORDANCE WITH, AND GOVERNED BY THE INTERNAL LAWS (AS OPPOSED TO THE CONFLICTS OF LAW PROVISIONS) OF THE STATE OF ILLINOIS, EXCEPT THAT QUESTIONS AS TO PERFECTION OF OUR SECURITY INTEREST AND THE EFFECT OF PERFECTION OR NON-PERFECTION SHALL BE GOVERNED BY THE LAW WHICH WOULD BE APPLICABLE EXCEPT FOR THIS SECTION.

**23. JURY WAIVER:** TO THE EXTENT PERMITTED BY APPLICABLE LAW, THE PARTIES HERETO EACH WAIVE ANY RIGHT TO A TRIAL BY JURY ON ANY CLAIM, DEMAND, ACTION, CAUSE OF ACTION OR COUNTERCLAIM ARISING UNDER OR IN ANY WAY RELATED TO THIS AGREEMENT.

**24. Limitation of Remedies and Damages:** You agree that in the event there is any dispute relating to or arising in connection with the CFA, You shall not be entitled to indirect, special, punitive or consequential damages in connection with any action arising under or in any way related to this CFA.

**25. Notices:** The parties to this CFA agree that any notices shall be in writing and delivered personally or by U.S. mail, certified mail or overnight mail or by a nationally-recognized courier services to Borrower's address as set forth above and to Creditor's address as set forth below the signature lines of this CFA, or at such other address designated by either party in writing.

**26. Miscellaneous:** You hereby acknowledge that You and any Guarantor have authorized the Dealer, Us, Our subsidiaries or affiliated companies, funding sources and Our successors, assigns and designees to investigate and share Your creditworthiness and credit capacity in connection with the establishment, maintenance and collection of Your account and to furnish information concerning Your account, including insurance information to credit reporting agencies, Our assignees and others who may lawfully receive such information. You agree, within forty-five (45) days after the end of each fiscal quarter other than the final fiscal quarter of each fiscal year, to deliver to Us a balance sheet and statement of income at the end of such quarter, each setting forth in comparative form the corresponding figures for the comparable period in the preceding fiscal year and, within one hundred and twenty (120) days after the end of each fiscal year, to deliver to Us a balance sheet as at the end of such year and statements of income and cash flows for such year, with accompanying notes to financial statements, each setting forth in comparative form the corresponding figures for the preceding year, in each case prepared in accordance with generally accepted accounting principles and practices consistently applied and certified by Your chief financial officer as fairly presenting Your financial position and results of operations, and, in the case of year-end financial statements, certified by an independent accounting firm acceptable to Us; and with reasonable promptness, furnish Us with such other information, financial or otherwise, relating to You or the Collateral as We shall reasonably request. You agree that no course of dealing or delay or failure to enforce Our rights under this CFA shall prevent Us from enforcing any of Our rights hereunder or under any addendums. If You fail to make any payment or take any action as and when required by law or by this CFA, We may do so in Your or Our name, without waiving any default, and You will reimburse Us on demand, together with interest at the lower of 18% or the highest amount permitted by law. You agree that the terms and conditions reflected in this CFA or any attachments hereto are a complete and exclusive statement of this CFA.

Notwithstanding the foregoing, to the extent there are errors or omissions in the information contained in this CFA and/or any attachment to this CFA, We may by written notice to You correct such errors or omissions. You agree that this CFA will be binding upon Your successors and assigns. You agree that Our waiver of any provision hereunder must be in writing and shall not constitute a waiver of any other matter. Any changes to the terms and conditions of this CFA must be in writing and agreed to and signed by Us. It is the express intent of the parties not to violate any applicable usury laws or to exceed the maximum amount of interest permitted to be charged or collected by applicable law, and any such excess payment will be applied to the payments in inverse order of maturity, and any remaining excess will be refunded to You. You authorize Us to contact You via Your home or business telephone number, e-mail, cell phone or fax number. You authorize Us, at our discretion, to install, at Your expense, a tracking device in the Collateral so that we may monitor the Collateral and in the event of default located and secure the Collateral. Any provision or clause hereof or any remedy herein provided found to be invalid or unenforceable in any jurisdiction under any applicable law shall be inapplicable to the extent of such unenforceability or invalidity, but the remaining provisions hereof shall be given effect in accordance with the manifest intent hereof, and any such invalidity or unenforceability in any jurisdiction shall not render unenforceable or invalid such provision in any other jurisdiction. You will promptly execute and deliver to Us such further documents, take such further action and provide such information as We may request in order to carry out more effectively the intent and purpose of this CFA, and/or comply with laws or regulations applicable to Us, You, and/or the transaction evidenced by this CFA, including information identifying the owners of Borrower and its affiliates and their respective ownership interests. At any time, We and any assignee of Ours is authorized to file one or more UCC financing statements without Your signature.

**27. Irrevocable Limited Power of Attorney:** You hereby irrevocably appoint Us and/or Our successors and assigns your true and lawful Attorney-in-Fact coupled with an interest with full authority and power to do and perform all and every act and thing whatsoever requisite and necessary to be done, as fully, to all intents and purposes as You might or could do if personally present, with full power of substitution and revocation, to complete, sign, execute, any instrument related to a loss settlement, any insurance check or authorize the application of warranty or insurance proceeds, file and deliver any title, Collateral registration or certificate of ownership, recording of liens, fixture filings, UCC financing statement(s), and to sell, record interest, transfer or otherwise dispose of the Collateral, whether in bulk or in parcel, whether or not the Collateral is present at such sale and with or without notice, at public or private sale. We and/or Our successors or assigns may apply the proceeds from any such sale or other disposition against any and all of Your obligations to Us and/or Our assigns. If Your signature on any financing statement is required by law, You shall execute such supplemental instruments and financing statements We deem to be necessary and advisable and shall otherwise cooperate to defend Our interest in the Collateral by filing or otherwise. You also agree to pay Us on demand filing, registration and releasing fees prescribed by the UCC or other law. Further, to the extent warranty or insurance premium(s) is/are financed hereunder, and in the event of a default under this CFA, You irrevocably appoint Us as Attorney-in-Fact, with full authority to (a) cancel any warranty or insurance policy(ies) in accordance with the provisions herein, (b) receive all refunds, rebates or sums due under said warranty or insurance policy(ies) and (c) execute and deliver on Your behalf all documents, forms and notices relating to the warranty or insurance policy(ies) hereunder.

**28. Electronic Payment:** By completing the information below, You hereby authorize and request Us to initiate scheduled or periodic electronic fund transfer debits (and credit entries and adjustments for any debit entries in error) or affect a charge by any other commercially accepted practice to the account indicated below in the financial institution named below. You hereby authorize and request said financial institution to honor the debit and/or credit entries initiated by Us. This authorization is for Installment Payments and any open charges or fees, including but not limited to late charges, non-sufficient funds (NSF) charges, insurance charges, or any charges or fees related to title or taxes due and outstanding under this CFA. This authority is to remain in force until such time as all amounts due are paid in full or until We and financial institution have received written notification from You terminating this authorization in such time and manner as to afford Us and financial institution a reasonable opportunity to act on it. You agree that Your bank account information may be disclosed and authorize assignment pursuant to Section 18 herein.

| | If the box is checked, You are required to make Your payments via Electronic Payment as a condition of this CFA.  PLEASE PROVIDE US WITH YOUR BANK OR SAVINGS INSTITUTION'S INFORMATION REQUESTED BELOW OR ATTACH A VOIDED CHECK. | | |
|---|---|---|---|
| X | | | |

| Name of Account Holder: | | ☐ Business Account  ☐ Personal Account | ☐ Checking Account  ☐ Savings Account |
|---|---|---|---|
| Bank Name and Branch: | | Account Number: | |
| Address (city & state): | | | |
| Telephone Number: | | Routing Number: | |

**29. ELECTRONIC SIGNATURE:** Creditor and Borrower may elect to execute this CFA via electronic signature. If this CFA is executed via electronic signature, You and we agree that the electronic version of this CFA which has been authenticated by you and us in accordance with applicable law and controlled by us (or our assignee) shall (pursuant to the rules and regulations of DocuSign and eOriginal, Inc.) constitute the original authoritative version of this CFA; provided that if the "Paper Out" process shall have occurred pursuant to the eOriginal Product Reference Guide, and there shall simultaneously exist both the "Paper Out" printed version and an electronic version of this CFA, then the "Paper Out" printed version of this CFA as identified in the eOriginal audit record and corresponding affidavit shall constitute the sole authoritative version. You also agree that by typing Your name in the boxes indicated below or any other electronic method of affixing Your signature, either in Your individual capacity or as an authorized representative of the Borrower, You are confirming that You are the person so indicated in the box below, and that You are providing Your electronic signature on this CFA. Your electronic signature shall evidence Your agreement to be bound by and authenticate this electronic record and attest to the statements contained in this CFA with the same effect as if You had manually signed this CFA. This CFA and any related electronic documents are electronic records that may be transferred, authenticated, stored and transmitted by electronic means. You agree to keep any security code or password secured and will not inappropriately disclose this information to others. You also confirm that all documentation related to this transaction delivered or executed using Your email address, login, security code and/or password are true and correct.

**YOU ACKNOWLEDGE THAT YOU HAVE READ AND ACCEPT THE TERMS OF THIS AGREEMENT, AMENDMENT, EXHIBIT, RIDER, AND SCHEDULE. FURTHER, YOU ACKNOWLEDGE THAT YOU HAVE RECEIVED AND ACCEPTED THE COLLATERAL, REQUEST THAT WE ACCEPT THIS AGREEMENT AND PAY THE DEALER FOR INVOICE(S) RELATED TO THE ABOVE-REFERENCED COLLATERAL. THIS AGREEMENT SHALL NOT BE A VALID CONTRACT UNTIL ACCEPTED BY CREDITOR. BORROWER(S) HEREBY WAIVES NOTICE BY CREDITOR OF ITS ACCEPTANCE OF THIS AGREEMENT.**

BORROWER:    INLAND TRANSPORTATION LTD.

Signature:    X _____     (PLEASE SIGN USING BLUE INK)

Name:    ULUGBEK F KUCHKAROV

Title:    PRESIDENT

Cell Phone:    ███████████     (REQUIRED – PLEASE COMPLETE)

Email Address:    ███████████

Billing Address:    ████████████████████████

AGREED TO AND ACCEPTED:

ENGS COMMERCIAL FINANCE CO. ("CREDITOR")

By:    **Rose Reynolds**

Print Name:    ROSE REYNOLDS

Title:    ~~Vice President – Operations~~   (DB)
        SR. VICE PRESIDENT - OPERATIONS

Address for Notice:
P.O. Box 128
Itasca, IL 60143-0128

# EXHIBIT 2


**ENGS** Commercial Finance Co.

# PERSONAL GUARANTY

### Contract # 93957

In consideration of ENGS COMMERCIAL FINANCE CO., (referred to as "Creditor/Lessor"), its successors and assigns, providing any present or future financing of any nature to INLAND TRANSPORTATION LTD. (referred to as "Borrower/Lessee"), the party(ies), entity(ies) or individual(s) executing this Guaranty ("Guarantor(s)"), jointly, or severally if more than one, absolutely, unconditionally and irrevocably guarantee to Creditor/Lessor, the payment and performance of any and all debt, liability and obligation of Borrower/Lessee to Creditor/Lessor (the "Obligations"), from time to time entered into, including but not limited to Borrower/Lessee's Obligations under any commercial finance agreement, commercial lease agreement, and any rider, amendment, addendum thereto and all other agreements (collectively, "Contracts") from time to time entered into between Creditor/Lessor and Borrower/Lessee. Creditor/Lessor may at its option, proceed at once and directly, without notice, against Guarantor(s) to collect and recover the full amount guaranteed or any portion of that amount, without proceeding against Borrower/Lessee or any other person or entity, or exercising any other remedy available to Creditor/Lessor. Guarantor(s) waives all defenses and notices, including those of acceptance hereof by Creditor/Lessor and of the creation and existence of Obligations; protest, presentment and demand; and any and all defenses otherwise available to a guarantor, surety or accommodation party. Guarantor(s) agrees that Creditor/Lessor may amend, renew, extend or otherwise modify any Obligations without affecting or impairing in any way the liability of Guarantor(s) hereunder. If any one or more Borrower/Lessee(s) is a corporation, limited liability company or partnership, it is not necessary for Creditor/Lessor to inquire into the powers of Borrower/Lessee or the officers, directors, partners, members or agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed and be an Obligation hereunder. Guarantor(s) will pay to Creditor/Lessor all expenses (including attorneys' fees) incurred by Creditor/Lessor in enforcing Creditor/Lessor's rights against Borrower/Lessee(s) and Guarantor(s). This Guaranty will not be discharged or affected by the death, dissolution, termination, bankruptcy or insolvency of Borrower/Lessee, and will bind Guarantor(s) heirs, personal representatives, successors and assigns. Guarantor(s) authorizes Creditor/Lessor or any of Creditor/Lessor's designees to obtain, and share with others, credit bureau reports regarding Guarantor(s)'s personal credit, and make other credit inquiries that Creditor/Lessor determines are necessary. Guarantor(s) acknowledge that this Guaranty is the entire agreement with Creditor/Lessor pertaining to its guaranty of the obligations described herein and it cannot be changed except with advance written consent of Creditor/Lessor. Guarantor(s) agree that any failure or delay by Creditor/Lessor to enforce its rights and remedies under this Guaranty does not prevent Creditor/Lessor from enforcing such rights or remedies at some future point in time. A photocopy, .pdf copy or facsimile of this Guaranty will be legally admissible under the "best evidence rule." A signed copy of this Guaranty and/or any related document sent by facsimile or by email attachment in .pdf format shall be treated as an original document and shall be admissible as evidence, and all signatures shall be binding as if manual signatures were personally delivered. If any payment applied to any Obligation is thereafter set aside, recovered, rescinded or required to be returned for any reason (including on account of a preference in the bankruptcy of any Borrower/Lessee), the Obligation to which such payment was applied shall for the purposes of this Guaranty be deemed to have continued in existence notwithstanding such application, and this Guaranty shall be enforceable as to such Obligation as fully as if such application had never been made. Guarantor(s) will promptly execute and deliver to Creditor/Lessor such further documents, and take such further action and provide such information as Creditor/Lessor may request in order to carry out more effectively the intent and purpose of this Guaranty, and or comply with laws or regulations applicable to Guarantor(s), Creditor/Lessor, and/or the transaction evidenced by this Guaranty, including information identifying the owners of Guarantor(s) and its affiliates and their respective ownership interests. Guarantor(s) hereby state that no assets are held in trust.

Creditor/Lessor may, without notice to or the consent of Guarantor(s), assign this Guaranty as it relates to an Obligation to a party who purchases all or part of the Obligations (hereinafter referred to individually as an "Assignee" and collectively as "Assignees"). An Assignee shall have the right to enforce this Guaranty against Guarantor(s) solely as it relates to the Obligation it purchased, and such enforcement may be brought separate and apart from actions by Creditor/Lessor and/or other Assignees. Guarantor(s) agrees that it shall, upon a request from Creditor/Lessor, promptly provide to Creditor/Lessor a copy of Guarantors' most recent annual financial statements and any other financial information of Guarantor(s) (including interim financial statements) that Creditor may request. Guarantor(s) authorizes Creditor to share such information with Creditor's affiliates, subsidiaries, and Assignees, and with any Dealer noted in any Contract guaranteed hereby. Guarantor(s) certify that the financial information provided to Creditor/Lessor is true, complete and accurate in all material respects. Guarantor(s) will not permit the sale or transfer of a majority of its ownership interests to any person or entity and Guarantor(s) will not consolidate or merge with or sell or transfer all or substantially all of its assets to, any person or entity, or allow a Blocked Person to have an ownership interest in or control of Guarantor(s). "Blocked Person" means any person or entity that is now or at any time (A) on a list of Specially Designated Nationals issued by the Office of Foreign Assets Control ("OFAC") of the United States Department of the Treasury or any sectoral sanctions identification list, or (B) whose property or interests in property are blocked by OFAC or who is subject to sanctions imposed by law, including any executive order of any branch or department of the United States government or (C) otherwise designated by the United States or any regulator having jurisdiction or regulatory oversight over Creditor/Lessor or its financing source, to be a person with whom Creditor is not permitted to extend credit to or with regard to whom, a guarantor relationship may result in penalties against Creditor/Lessor or limitations on a creditor's ability to enforce a transaction.

Guarantor(s) acknowledges that Creditor/Lessor is relying on this Guaranty in providing financing to Borrower/Lessee.

THIS GUARANTY SHALL BE CONSTRUED IN ALL RESPECTS IN ACCORDANCE WITH, AND GOVERNED BY THE INTERNAL LAWS (AS OPPOSED TO THE CONFLICTS OF LAW PROVISIONS) OF THE STATE OF ILLINOIS. GUARANTOR(S) HEREBY CONSENTS TO THE JURISDICTION OF ANY LOCAL, STATE, OR FEDERAL COURT LOCATED WITHIN THE STATE OF ILLINOIS AND WAIVES ANY OBJECTION BASED ON IMPROPER VENUE OR FORUM NON CONVENIENS. GUARANTOR(S) ACKNOWLEDGES THAT SUCH GUARANTOR(S) HAS AN OPTION TO CONSULT WITH COUNSEL OF ITS CHOICE REGARDING THIS GUARANTY AND THAT IT SHALL NOT BE CONSTRUED AGAINST OTHER OF US BY REASON OF DRAFTSMANSHIP. TO THE EXTENT PERMITTED BY APPLICABLE LAW, THE PARTIES HERETO EACH WAIVE ANY RIGHT TO A TRIAL BY JURY ON ANY CLAIM, DEMAND, ACTION, CAUSE OF ACTION OR COUNTERCLAIM ARISING UNDER OR IN ANY WAY RELATED TO THIS GUARANTY, AND UNDER ANY THEORY OF LAW OR EQUITY, WHETHER NOW EXISTING OR HEREAFTER ARISING.

Creditor/Lessor and Guarantor(s) may elect to execute this Guaranty via electronic signature. If this Guaranty is executed via electronic signature, Guarantor(s) and Creditor/Lessor agree that the electronic version of this Guaranty which has been authenticated by Guarantor and Creditor/Lessor in accordance with applicable law and controlled by Creditor/Lessor (or our assignee) shall (pursuant to the rules and regulations of DocuSign, Inc. and eOriginal, Inc.) constitute the original authoritative version of this Guaranty; provided that if the "Paper Out" process shall have occurred pursuant to the eOriginal Product Reference Guide, and there shall simultaneously exist both the "Paper Out" printed version and an electronic version of this Guaranty, then the "Paper Out" printed version of this Guaranty as identified in the eOriginal audit record and corresponding affidavit shall constitute the sole authoritative version. Guarantor(s) also agrees that by typing his/her name in the boxes indicated below or any other electronic method of affixing your signature, Guarantor(s) confirms that he/she is the person so indicated in the box below, and that he/she is providing an electronic signature on this Guaranty. Guarantors' electronic signature shall evidence his/her agreement to be bound by and authenticate this electronic record and attest to the statements contained in this Guaranty with the same effect as if Guarantor(s) had manually signed this Guaranty. This Guaranty and any related electronic documents are electronic records that may be transferred, authenticated, stored and transmitted by electronic means. Guarantor(s) agrees to keep any security code or password secured and will not inappropriately disclose this information to others. Guarantor(s) also confirms that all documentation related to this transaction delivered or executed using his/her email address, login, security code and/or password are true and correct.

Date: January 29, 2020

GUARANTOR: ULUGBEK F KUCHKAROV

Signature : X _____  [PLEASE SIGN USING BLUE INK]

Address: ████████████████
Email: ████████████████

*PLEASE REVIEW AND PROVIDE UPDATED INFORMATION*      Address for Notice: P.O. Box 128, Itasca, IL 60143-0128      Page 1 of 1

(CMT-00203) PG (Rev02-17)

# EXHIBIT 3



**COMMERCIAL FINANCE AGREEMENT**

Contract # 106640

This Commercial Finance Agreement together with any Amendment(s), Exhibit(s), Schedule(s), Addendum(s) and/or other attachments (collectively, this "**CFA**") dated as of **September 02, 2020** is entered into by and between **Engs Commercial Finance Co.** ("**Creditor**"), a California corporation having its principal place of business at **One Pierce Place, Suite 1100 West, Itasca, Illinois 60143** and

**INLAND TRANSPORTATION LTD.** ("Borrower"), with a place of business located **746 GENESEE DR, NAPERVILLE, IL 60563** telephone number(s): **407-929-1169** and email address: **uluq1705@gmail.com**

The use of the word "You," "Your" and "Your Company" in this CFA refers to each of the Borrowers and Co-Borrowers, if any. If more than one Borrower is named in this CFA, the liability of each Borrower shall be joint and several and shall be subject to the terms of Section 20(C). "We," "Us" and "Our" refers to Creditor and its successors and assigns. "Term" shall mean the period starting on the Commencement Date (defined below) and loan expiration.

**1. Equipment Description** (include Quantity, Year, Make, Model and Serial No. and/or VIN No.). The Collateral described below and/or listed on an attached Schedule or Dealer Invoice(s) identified by Creditor for such purpose, including all additions, replacements, accessions, accessories, attachments, substitutions, exchanges, improvements, repairs, parts, replacement parts, manuals and reference books, supplements, upgrades, thereto and thereof, however designated together with any related software license(s), software, as may be modified, corrected, supplemented or enhanced from time to time, and the proceeds thereon, including any and all cash and non-cash proceeds from any source, including but not limited to insurance proceeds (hereinafter collectively referred to as "Collateral"):

| QUANTITY | COLLATERAL DESCRIPTION | VIN # / SERIAL NUMBER |
|---|---|---|
| 2 | 2021 FREIGHTLINER - CASCADIA (CA125SLP) - SLEEPER TRACTOR (NEW) | 3AKJHHDR9MSMR8186<br>3AKJHHDR0MSMR8187 |

**2. Name and location of "Dealer":** You are solely responsible for the selection of the Dealer and/or manufacturer referenced below:

**M & T TRUCK SALES INC.**
7545 SOUTH MADISON STREET, BURR RIDGE, IL 60527
630-766-2614

**3. Itemization of Purchase Price.** Creditor is directed to pay purchase price described below to Dealer, manufacturer and/or other suppliers as follows:

| | | |
|---|---|---|
| **SALE PRICE** (combined price of each unit as itemized on Your invoice(s) submitted for financing, may include: federal excise tax, accessories, attachments, fees, license, title or registration fees, premiums, protection plans or service contracts, services and/or additional charges which may be included below): | | **$319,700.00** |
| **CASH DOWN PAYMENT** (if check is payable to Engs Commercial Finance Co., please note any payment in excess of $5,000.00 must be made via cashier's check or wire.): | $32,000.00 | |
| **TOTAL NET TRADE-IN:** | $0.00 | |
| **TOTAL DOWN PAYMENT** (due at the time of execution): | | **$32,000.00** |
| **FEES, CHARGES AND PREMIUMS INCLUDED IN YOUR AMOUNT FINANCED** | | |
| SALES TAX: | $0.00 | |
| DOCUMENTATION FEE FINANCED: | $695.00 | |
| INTERIM CHARGE (provides 45 or more days before next payment date): | $2,977.31 | |
| FLORIDA STAMP TAX: | $0.00 | |
| OTHER FEES FINANCED: | | |
| **TOTAL FEES\CHARGES FINANCED:** | $3,672.31 | |
| **TOTAL AMOUNT FINANCED:** | | **$291,372.31** |
| **MONTHLY INVOICE FEE** (waived only for electronic payment): | | **$10.00** |
| **ADVANCE PAYMENT(S), FEES, CHARGES, TAXES – DUE AT SIGNING** | | |
| 0      ADVANCE PAYMENT(S) OF: | $0.00 | |
| **FEES\CHARGES - DUE AT SIGNING (NON-FINANCED):** | | |
| **TOTAL FEES, CHARGES, TAXES (NON-FINANCED):** | $0.00 | |
| **TOTAL AMOUNT DUE AT SIGNING:** | | **$0.00** |

**4. Payment Schedule, Term, Number and Amount of Installment Payments and Installment Due Date:**

| 60 MONTH TERM ("TERM") | | |
|---|---|---|
| **INSTALLMENT PAYMENTS:** | 60 @ $6,014.30 | |
| **INVOICE DUE DATE AND INSTALLMENT PAYMENT AMOUNT** | | |
| **INVOICE DUE DATE:** | October 15, 2020     INVOICE AMOUNT: | $6,014.30 |

**5. NO WARRANTIES:** YOU ACKNOWLEDGE THAT WE ARE NOT THE MANUFACTURER OF THE COLLATERAL NOR THE MANUFACTURER'S AGENT NOR A DEALER THERETO. YOU ARE FINANCING THE COLLATERAL "AS IS" AND WITH ALL FAULTS. WE DO NOT MAKE AND WE HEREBY DISCLAIM ANY WARRANTY OR REPRESENTATION WHATSOEVER, EXPRESS OR IMPLIED, WITH RESPECT TO THE COLLATERAL, INCLUDING, WITHOUT LIMITATION AS TO THE DURABILITY, QUALITY, CONDITION OR SUITABILITY, THE MERCHANTABILITY OF THE COLLATERAL, OR ITS FITNESS FOR ANY PARTICULAR PURPOSE. WE SHALL NOT BE LIABLE FOR ANY LOSS, DAMAGE OR EXPENSE OF ANY KIND CAUSED DIRECTLY OR INDIRECTLY BY THE COLLATERAL OR ITS USE, OPERATION, OR POSSESSION, OR BY ANY DAMAGE WHATSOEVER AND HOWEVER CAUSED. IF THE COLLATERAL DOES NOT OPERATE AS REPRESENTED OR WARRANTED BY THE DEALER OR MANUFACTURER, OR IS UNSATISFACTORY FOR ANY REASON, REGARDLESS OF CAUSE OR CONSEQUENCE, YOUR ONLY REMEDY, IF ANY, SHALL BE AGAINST THE DEALER OR MANUFACTURER OF THE COLLATERAL AND NOT AGAINST US. NO DEFECT, DAMAGE OR UNFITNESS OF THE COLLATERAL FOR ANY PURPOSE SHALL RELIEVE YOUR OBLIGATION TO MAKE PAYMENTS OR RELIEVE YOU OF ANY OTHER OBLIGATION UNDER THIS CFA. TO THE EXTENT PERMITTED BY THE MANUFACTURER OR DEALER AND PROVIDED NO DEFAULT HAS OCCURRED AND IS CONTINUING HEREUNDER, WE ASSIGN ALL MANUFACTURER'S AND DEALER'S WARRANTIES TO YOU. No defect or unfitness of the Collateral, and no failure on the part of the manufacturer, Dealer or the shipper of the Collateral to deliver the Collateral or any part thereof to You shall relieve You of the obligation to pay any Installment Payment or any other obligation hereunder. We shall have no obligation in respect of the Collateral and shall have no obligation to install, test, adjust or service the Collateral. You shall only look to persons other than Creditor such as the manufacturer, Dealer or carrier thereof should any item of Collateral for any reason and in any way be defective.

**6. Loan:** You agree to finance the Collateral together with all affixed parts, attachments and accessories, pursuant to the Payment Schedule and Itemization of Purchase Price Sections reflected above and subject to the terms of this CFA. You have selected the Collateral, Dealer, and/or manufacturer based upon Your own judgment and disclaim any reliance upon any statements or representations made by Us. You agree to indemnify and hold Us harmless and to defend Us against any claim of liability by Dealer. We may in Our sole discretion, accept a photocopy, electronically transmitted facsimile, electronic version or other reproduction of this CFA (a "Counterpart") as the binding and effective record of this CFA whether or not an ink-signed copy hereof is also received by Us from You, provided, however, that if We accept a Counterpart as the binding and effective record hereof, the Counterpart acknowledged in writing by Us shall constitute the record hereof. You represent to Us that the signature that appears on the Counterpart that is transmitted by You to Us in any manner described above is intended by You to authenticate the Counterpart notwithstanding that such signature is electronic, facsimile, electronic version or a reproduction and You further agree that such Counterpart received by Us, shall, when acknowledged in writing by Us, constitute an original document for the purposes of establishing the provisions thereof and shall be legally admissible under the best evidence rule and binding on and enforceable against You. If We accept a Counterpart as the binding and effective record hereof only such Counterpart acknowledged in writing by Us shall be deemed an original and to the extent that this CFA constitutes chattel paper, perfection of a security interest by possession may only be accomplished by possession of the Counterpart that bears Our ink-signed or stamped acknowledgement. This CFA may be executed in counterparts, each of which when so executed shall be deemed to be an original and all of which when taken together shall constitute one and the same agreement.

**7. Security Interest:** You hereby grant to Us a first priority perfected security interest under the Uniform Commercial Code ("UCC") in the Collateral, whether now owned or hereafter acquired, whether used as equipment or inventory, and all replacements thereof and all receivables, rebates, discounts, credits, payments, refunds, proceeds, all accounts, general intangibles, contract rights, insurance proceeds, instruments, proceeds and products and chattel paper relating to the foregoing Collateral including, without limitation, the rights to all payments relating to or arising out of the sale, lease, rental or other disposition of the foregoing, all books and records at any time evidencing or related to the foregoing and all software or other intellectual property used in connection with the Collateral. Such security interest is granted to secure payment and performance by You of Your obligations hereunder. You further grant to Us a security interest in the Collateral (separate and distinct from and subordinate only to the security interest granted to Us above) to secure the payment and performance of all now existing or hereafter arising debts, liabilities and obligations of Yours of every kind and character, whether direct, indirect, absolute, contingent, primary, secondary, or otherwise to Us, whether under this CFA or any other agreement, and whether due directly or acquired by assignment, transfer, renewal, extension, refinancing or other means ("Liabilities"), provided, however, that such cross-collateralization shall only

benefit Us and those of Our assignees who have been assigned both this CFA and such other debts, liabilities or obligations.

**8. Ordering Collateral, Delivery and Acceptance:** If You entered into any purchase or supply contract with any Dealer, manufacturer or supplier for the Collateral, You hereby assign to Us all of Your rights under such purchase or supply contract, but none of Your obligations, except for the obligation to pay for the Collateral if it is accepted by You according to the terms of this CFA. The occurrence of the Commencement Date (as defined below) shall be conclusive evidence that You have inspected, tested and confirmed Your satisfaction with the Collateral, accepted the Collateral on an "AS-IS, WHERE-IS AND WITH ALL FAULTS" basis for all purposes hereunder, and directed Us to make payment for Your acquisition of the Collateral as provided herein.

**9. Borrower Representations and Warranties:** You represent and warrant to Us that as of the date on which You execute this CFA and the Commencement Date: (i) If You are a partnership, corporation, limited liability company or other legal entity, the execution and delivery of this CFA and the performance of Your obligations hereunder and thereunder have been duly authorized by all necessary action on Your part and are not in contravention of, and will not result in a breach of, any of the terms of Your charter, by-laws, articles of incorporation or other organizational documents or any loan agreements or indentures of Yours, or any other contract, agreement or instrument to which You are a party or by which You are bound; (ii) the person signing this CFA on Your behalf is duly authorized, and this CFA has been duly authorized, executed and delivered; (iii) this CFA is Your legal, valid and binding agreement enforceable against You in accordance with its terms, and the execution, delivery and performance of this CFA is not in contravention of or result of any breach of any loan agreements, indentures of Yours or any other contract, agreement or instrument to which You are a party or by which You are bound; (iv) Your exact legal name as it appears on Your charter or other organizational documents, including as to punctuation and capitalization, and Your jurisdiction of incorporation or formation, and principal place of business or chief executive office are as set forth in the heading of this CFA; (v) You are duly organized, validly existing and in good standing under the laws of the state of Your incorporation or formation and are duly qualified and authorized to transact business in, and are in good standing under the laws of, each other state in which the Collateral is or will be located or otherwise necessary for the conduct of Your business; (vi) there has been no change in Your name, or the name under which You conduct business, within the one (1) year preceding the date hereof except as previously reported in writing to Us; (vii) You have not moved Your principal place of business or chief executive office, or have not changed the jurisdiction of Your organization, within the one (1) year preceding the date hereof except as previously reported in writing to Us; (viii) all information provided by You to Us in connection with this CFA is true and correct including the financial information which You have submitted or will submit in connection with this CFA; (ix) there are no suits pending or threatened against You or any Guarantor of Your obligations (each, a "Guarantor") which, if decided adversely, might materially adversely affect Your or such Guarantor's financial condition, the value, utility or remaining useful life of the Collateral, the rights intended to be afforded to Us hereunder or under any guarantee or Your ability or any Guarantor's ability to perform its obligations under the CFA or any document delivered in connection herewith; and (x) none of You, or any Guarantor, any of Your or any Guarantor's subsidiaries nor any director or officer of any of the foregoing is an individual or entity that is owned or controlled by persons that are Blocked Person(s). "Blocked Person" means any person or entity (A) that is now or at any time on a list of Specially Designated Nationals issued by the Office of Foreign Assets Controlled ("OFAC") of the United States Department of the Treasury or any sectoral sanctions identifications list; (B) whose property or interests in property are blocked by OFAC or who is subject to sanctions imposed by law, including any executive order of any branch or department of the United States government; or (C) otherwise designated by the United States or any regulator having jurisdiction or regulatory oversight over Us or our financing source, to be a person with whom We or they are not permitted to extend credit to or with regard to whom a buyer relationship may result in penalties against Us or limitations on a creditor's ability to enforce a transaction.

**10. Payments and Prepayment:** The "Commencement Date" of this CFA shall be the earlier of: (i) the Contract Date set forth above on this CFA, or (ii) the date We pay Dealer for the Collateral. You agree as of the Commencement Date, the Collateral is subject to this CFA. The Interim Charge set forth above is an amount equal to 1/30th of the monthly Installment Payment (set forth above) multiplied by the number of days between the Commencement Date and the date that is one month prior to the Invoice Due Date. You acknowledge that the interest rate used to compute the Interim Charge is higher than the implicit interest rate used to calculate the Installment Payments during the Term. All Installment Payments are due and payable in arrears on or before the Invoice Due Date (and on the same day of each subsequent month during the Term). Your receipt of an invoice is not a condition of Your obligation to pay Your Installment Payments or other charges when due. If the Installment Payment includes a cost of service and/or maintenance, You acknowledge that such inclusion is for Your convenience. You will not assert against Us any claim, defense, set-off or demand for compensation for any reason, including those

which You might have under any service or maintenance contract relating to the Collateral. Creditor reserves the right to adjust the Interest rate and Your Installment Payment based upon any increase in either swap rate or Creditor's cost of capital from the time of approval until the time of funding. We reserve the right to adjust Your Installment Payment, reflected above, by up to 10% to reflect changes in the final invoice of the Dealer or manufacturer, as applicable. Any such adjustment to the final invoice of the Dealer or manufacturer shall be reflected on a subsequent invoice to be sent to You within thirty (30) days. **Borrower's obligation to repay all amounts payable by Borrower as set forth herein is absolute, unconditional and irrevocable, and all such amounts shall be paid by Borrower in accordance with the terms hereof without any abatement, reduction, setoff or defense of any kind.** You agree that upon termination of any financed warranty or insurance policy(ies), any premium, rebate or refund will be applied to Your account, at Our option: (i) toward outstanding charges, (ii) future installments, or (iii) by adjusting Your remaining Installment Payments to reflect such rebate. However, You will remain obligated to pay any deficiency charges relating to such warranty or insurance policy(ies) after rebate or refund is applied. You may prepay Your obligations under this CFA in whole but not in part at any time upon prior written notice to Us by paying Us, in cash, the unpaid principal balance, plus $250, plus one percent (1%) of the unpaid principal balance for each 12-month period remaining on this CFA ("Prepayment"). A partial 12-month period remaining shall be deemed a full 12-month period remaining for purposes of calculating the Prepayment amount. TIME IS OF THE ESSENCE WITH RESPECT TO THE OBLIGATIONS OF BORROWER UNDER THIS AGREEMENT.

**11. Use and Location:** You agree that the Collateral will be used for its intended purpose, and that the loan contemplated hereby and Your use of the Collateral will be solely for commercial and business purposes and not for personal, family or household purposes. You shall NOT use the Collateral to haul or transport any hazardous materials or products. You will not transport persons for hire without our written consent. The Collateral will be and shall remain personal property and, at Your expense, You shall keep the Collateral free from any and all liens and encumbrances other than any liens or encumbrances in favor of Us. You shall mark and identify the Collateral with all information and in such manner as We or Our assigns may request from time to time and replace promptly any such markings or identifications which are removed, defaced or destroyed. You shall give Us immediate notice of any attachment or other judicial process, liens or encumbrances affecting the Collateral. You shall keep the Collateral at the Borrower's address or Collateral Location referenced herein. You may not store the Collateral at any other location without Our prior written consent. Borrower shall not part with possession or control of the Collateral or suffer or allow to pass out of its possession or control any item of Collateral.

Collateral Location (if different enter below):
746 GENESEE DR, NAPERVILLE IL 60563

**12. Maintenance, Installation:** You are responsible for any installation costs and You agree to keep the Collateral, at Your cost, in good repair and working order and pay all costs relating to the use and operation of the Collateral. Except for upgrades that do not reduce the value or marketability of the Collateral and as required to comply with this Section, You shall not make any alterations, additions or improvements to the Collateral without Our prior written consent, except that You shall make all modifications and improvements thereto in accordance with any manufacturer's specifications and as otherwise required by law. All additions and improvements made to the Collateral shall immediately become the property of Creditor and be deemed part of the Collateral for all purposes and shall not be removed if removal would impair the Collateral's economic value or functional utility. Any modifications shall be made in accordance with the recommendations and standards set by the manufacturer of the parts or devices included in such modification. You shall be solely responsible for, and shall indemnify, defend and hold Us harmless from and against, any and all claims resulting from the breach of this Section.

**13. Insurance; Indemnification:** You agree at all times, at your own expense, to: (i) insure the Collateral against loss, theft or damage from every cause whatsoever in an amount not less than the Total Amount Financed reflected above and on such terms as specified in Our Insurance Request Form, (ii) maintain comprehensive general liability collision insurance insuring against liability for property damage, death and bodily injury resulting from Collateral, as specified in our Insurance Request Form, (iii) name Us and/or Our assigns on the forgoing policy(ies) as sole Loss Payee; and (iv) maintain such coverage from an insurance carrier or carriers acceptable to Us. All policies shall contain clauses naming Us and Our assignees "Loss Payee" and requiring the insurer to furnish Us with at least thirty (30) days prior written notice of any material change, cancellation, or non-renewal of coverage and stating that coverage shall not be invalidated against Us or Our assigns because of any violation of any condition or warranty contained in any policy or application therefor by Borrower or by reason of any action or inaction of Borrower. You agree to inform Us immediately in writing of any notices from, or other communications with, any insurers that may in any way adversely affect the insurance policies being maintained pursuant hereto or of any insurance claims. No insurance shall be

subject to any co-insurance clause. You agree to provide Us with certificates or other evidence of insurance acceptable to Us, before the Term begins, and annually during the Term, and whenever there is a change in carrier or other change in the insurance required hereby. If at any time You fail to keep the Collateral properly insured in accordance with Our requirements or fail to deliver to Us a valid and acceptable certificate of insurance reflecting such insurance as being in effect, it will be deemed as a default hereunder. Regardless of the existence of any applicable insurance, You agree to indemnify and hold Us, Our employees and affiliates harmless from all suits, claims, demands, losses, damages, judgments, obligations, actions, suits and all legal proceedings, and any and all costs and expenses in connection therewith, including, attorneys' fees and liabilities arising out of, or in any manner connected with, or resulting directly or indirectly from the Collateral, including, without limitation, the manufacture, purchase, loan, financing, selection, ownership, delivery, rejection, non-delivery, transportation, possession, use, storage, operation, condition, maintenance, repair, return or other disposition of the Collateral or with this loan, including without limitation, claims for injury to or death of persons and for damage to property, whether arising under the doctrine of strict liability, by operation of law or otherwise, and to give Creditor prompt notice of any such claim or liability. If You fail to keep the Collateral properly insured, then, in addition to the other remedies available hereunder, We have the right, but not the obligation, to obtain such insurance for the Term at Your expense and if so obtained, We will add to Your Installment Payments due hereunder and You will pay to Us Our costs of obtaining such insurance and any customary fees or charges of Ours or Our designees associated with such insurance. You also agree to pay an administrative fee equal to 10% of Your Installment Payment for each 30-day period during the Term the Collateral is uninsured or remains improperly insured. You understand that this fee will not be utilized to obtain insurance on Your behalf and any insurance We purchase as permitted hereby will benefit Us and not You and may be more expensive than insurance you could purchase by compliance with the terms hereof. Nothing in this CFA nor Our actions hereunder, including without limitation Our assessment of administrative fees or other amounts permitted hereby, shall mean that We are selling insurance or providing insurance coverage. The fees and other amounts payable hereunder do not necessarily reflect actual costs or exposures and may result in additional profit to Us. You may, upon not less than thirty (30) days express written notice to Us and delivery to Us of satisfactory insurance certificates or other satisfactory evidence of insurance complying with the terms of this CFA, terminate any insurance or related charges pursuant to this Section. Your obligations under this Section shall survive termination or expiration of this CFA.

**14. Taxes and Fees:** You agree to pay when due or reimburse Us for all excise and other taxes, fees, fines, penalties and internal administrative costs relating to use or ownership of the Collateral or to this CFA, including but not limited to documentary stamp taxes, now or hereafter imposed, levied or assessed by any federal, state or local government or agency. If any federal, state, county or local government or agency requires any taxes, charges or fees to be paid in advance, and We pay such taxes, charges or fees, We reserve the right to adjust the remaining payments, so that We may recover any payment of such taxes, charges or fees. Any such adjustment shall be reflected on Your subsequent invoice(s). You agree to comply with all registration, filing, licensing, tax and title laws applicable to the Collateral and will be responsible for any fees or penalties for failure to do so on a timely basis. Your obligations under this Section shall survive termination or expiration of this CFA.

**15. Titled Equipment:** Any Collateral that is subject to title and/or registration laws shall be titled and registered as required by law within ten (10) days of Your receipt of the Collateral, listing Us as sole lienholder. Failure to do so will be deemed an event of default hereunder. **In addition, You agree to pay an administrative fee equal to 10% of Your Payment for each additional 30-day period during that the Collateral remains unregistered or improperly titled or registered. You understand that this fee will not be utilized to pay any taxes or registration fees on Your behalf.** The fees and other amounts payable hereunder do not necessarily reflect actual costs or exposures and may result in additional profit to Us.

**16. Default and Remedies:** Each of the following, and any other events or circumstances herein provided to be a Default, is a "Default" under this CFA: (i) failure to pay when due any amount due under this CFA or any other amount due and owing by You to Creditor; (ii) Your breach or failure to perform any other covenants and promises under this CFA or any other agreement entered into by You with Creditor; (iii) the death of any individual Borrower, or partner of Borrower if Borrower is a partnership, or any Guarantor; (iv) Your failure to pay indebtedness when due to other lenders; (v) any attempt by You to sell, rent or lease the Collateral or any interest therein to anyone other than Us or a Co-Borrower named herein (and any such attempt shall be void); (vi) allowing anyone other than You to operate the Collateral; (vii) You or any Guarantor makes an assignment for the benefit of creditors, or becomes insolvent; (viii) You or any Guarantor threatens to cease or ceases to do business as a going concern, seeks any arrangement or compromise with creditors, dissolves, or takes any actions regarding the cessation or winding up of Your business affairs or the business affairs of any Guarantor; (ix) any representation or warranty made by You herein or in any document or certificate furnished by You to Us either

directly or indirectly is incorrect in any material respect at any time; (x) You or any Guarantor files for bankruptcy or enters into any reorganization proceeding; (xi) any proceeding in bankruptcy, receivership, liquidation or insolvency is commenced against You or Your property or any Guarantor or their property; (xii) any Guarantor fails to pay or perform any obligation to Us, or fails to observe or perform any term, condition, covenant, representation or warranty contained in any agreement made by such Guarantor in favor of Us; and/or (xiii) We believe, acting reasonably and in good faith, that the prospect of payment to Us under this CFA is impaired. Upon Default and at any time thereafter, at Our election, We may (a) accelerate the unpaid balance due hereunder, without protest, presentment, demand or notice (including but not limited to notice of intent to accelerate and notice of acceleration), all of which You waive, and require that You pay, as reasonable liquidated damages for loss of bargain, the "Accelerated Balance"; (b) require that You deliver to Us the Collateral; (c) repossess the Collateral or disable the Collateral without court order and You will not make any claims against Us for damages or trespass or any other reason; (d) sell the Collateral by public or private sale, retain the Collateral in full or partial satisfaction of Your obligations hereunder, or otherwise dispose of the Collateral in any manner We choose, free and clear of any of Your claims or rights, without notice except to the extent required by law, and if notice is given at least ten (10) days before the sale or other disposition; (e) sue to enforce Your performance hereof; (f) recover interest on the unpaid balance of Creditor's Loss plus any other amounts recoverable hereunder from the date it becomes payable until fully paid at the rate of the lesser of 12% per annum or the highest rate permitted by law; and/or (g) pursue any right or remedy available to Us at law, or in equity, including any rights or remedies under the UCC. The "Accelerated Balance" will be equal to the total of (x) all accrued and unpaid amounts then due and owing hereunder, and (y) the sum of the remaining Installment Payments scheduled to be paid hereunder discounted by the rate of 1.5% per annum, and (z) any recovery by Us in excess of unamortized Total Amount Financed (as defined above) constituting make-whole premium, compensation for loss of bargain and unamortized overhead and closing costs and other compensation and not a penalty as You expressly agree. In addition, You agree to pay Our reasonable attorneys' fees and actual costs including repossession, refurbishing the Collateral and collection costs, and all non-sufficient funds charges and similar charges, and You shall deliver the Collateral (at Your expense) to a location designated by Us. Each remedy shall be cumulative and in addition to any other remedy referred to above or otherwise available to Us at law or equity. No express or implied waiver of any default shall constitute a waiver of any of Our other rights. Our election to exercise any remedy available hereunder, at law or in equity, shall not prevent Us from exercising any other available remedy, whether concurrently or at a later time. Upon default and at any time thereafter, at Our election, We can accelerate, in accordance with actual law, the entire unpaid balance due hereunder and require that You pay, as reasonable liquidated damages for loss of bargain, the "Accelerated Balance." The Accelerated Balance will be equal to the total of (i) all accrued and unpaid amounts then due and owing hereunder, and (ii) the sum of the remaining Payments scheduled to be paid hereunder discounted by 1½ percent, and will be immediately due and payable, without protest, presentment demand or notice (including but not limited to notice of intent to accelerate and notice of acceleration), all of which You waive. We can also pursue any of the remedies available to Us under the UCC or any other law. In addition, You agree to pay Our reasonable attorneys' fees and actual costs including repossession, refurbishing the Collateral and collection costs, and all non-sufficient funds charges and similar charges, and You shall deliver the Collateral (at Your expense) to a location designated by Us.

**Louisiana Default Remedies under Chapter 9 of Louisiana Law.** This subsection shall apply to any of the Collateral (including any Collateral proceeds) that, at any time, is or may be located in the State of Louisiana, or otherwise be subject to the application of Louisiana law in any respect (the "Louisiana Collateral"). Upon the occurrence of any event of default, We shall have the following rights and remedies with respect to the Louisiana Collateral, which rights and remedies are in addition to, and not in lieu or limitation of, any other rights and remedies that may be available to Us under this CFA, under Chapter 9 of the Louisiana Commercial Laws, under the laws in effect in any state other than Louisiana, or at law or equity generally.

For purposes of foreclosure under Louisiana executory process procedures, You confess judgment and acknowledge to be indebted unto and in favor of Us up to the full amount of Your Liabilities plus interest, costs, expenses, attorney's fees, and other fees and charges. To the extent permitted under applicable Louisiana law, You additionally waive (a) the benefit of appraisal as provided in Articles 2332, 2336, 2723 and 2724 of the Louisiana Code of Civil Procedure and all other laws with regard to appraisal upon judicial sale; (b) any right to receive demand for payment from the court prior to the court issuing a writ of seizure and sale; (c) the notice of seizures as provided under Articles 2293 and 2721 of the Louisiana Code of Civil Procedure; and (d) all other benefits provided under Articles 2331, 2722 and 2723 of the Louisiana Code of Civil Procedure and all other Articles not specifically mentioned above.

Should any of the Louisiana Collateral be seized as an incident to an action, You agree that the court issuing any such order shall, if requested by Us,

appoint Us or any person or entity named by Us at the time such seizure is requested, or at any time thereafter, as keeper of the Louisiana Collateral as provided under La. R.S. §9:5136, et seq. You agree to pay the reasonable fees and expenses of such keeper, which compensation to the keeper shall also be a part of the secured Liabilities under this CFA.

17. **Late Charge:** If You fail to pay any sum due under this CFA within five (5) days after its due date ("Late Payment"), You agree to pay Us a late charge (as reasonable liquidated damages and not as a penalty) equal to, the greater of $50.00 or 10% of the Late Payment not to exceed the maximum amount permitted by applicable law ("Late Charge"). If any check or funds transfer request for any payment is returned to Us unpaid, You shall pay Us a service charge of $55 for each such returned check or request

18. **Assignment and Inspection. YOU HAVE NO RIGHT TO SELL, TRANSFER, SUBLEASE, ASSIGN THIS CFA OR THE COLLATERAL OR TO GRANT A SECURITY INTEREST IN OR OTHERWISE ENCUMBER THE COLLATERAL OR THIS CFA.** We may sell, transfer, assign, or encumber this CFA or the related Collateral without notice or consent. You agree that if We sell, transfer, assign, or encumber this CFA or the related Collateral, the assignee will have the rights and benefits that We assign to the assignee and will not have to perform any of Our obligations. You agree that the rights of the assignee will not be subject to any claim, defense or set-off that You may have against Us. We and Our agents and representatives shall have the right at any time during regular business hours to inspect the Collateral and for that purpose to have access to the location of the Collateral without any claims for trespass or damages.

19. **Risk of Loss.** You hereby assume and shall bear the entire risk of loss, theft, damage and destruction of the Collateral from any cause whatsoever commencing upon the earlier of the delivery of the Collateral to You or the date We advance any portion of the Amount Financed hereunder and no loss, theft, damage or destruction of the Collateral shall relieve You of the obligation to make scheduled Installment Payments or any other obligation under this CFA, and this CFA shall remain in full force and effect except as provided herein. You shall notify Us in writing within five (5) days of any item of Collateral becoming lost, stolen or damaged and of the circumstances and extent of such damage. If damage of any kind occurs to any item of Collateral, You, at Our option, shall at Your expense (a) place the item in good repair, condition or working order, or (b) if the Collateral cannot be repaired or is lost, stolen, destroyed, rendered permanently unfit for use for any reason, or in the event of condemnation or seizure of an item of Collateral, pay to Us an amount equal to the sum of the following: (1) all amounts payable by You hereunder due but unpaid as of such date plus (2) the amount of all remaining unpaid Installment Payments hereunder not yet due as of such date, discounted from the respective dates payments would be due at the Discount Rate as defined below, "Discount Rate" means (i) the rate set forth for the United States Treasury Bond or Note having the closest term to (but not longer than) the original term of this loan, as set forth in the Wall Street Journal two (2) business days prior to the Commencement Date, (ii) the rate set forth for the United States Treasury Bond or Note having the closest term to (but not longer than) the remaining term of this CFA, as set forth in the Wall Street Journal two (2) business days prior to the date of calculation of this amount, or (iii) 1.5%, whichever is lowest. If a rate referred to in the preceding clauses "(i)" or "(ii)" is not published in the Wall Street Journal, such rate shall be taken from a reputable source selected by Us.

20. **Borrower's Covenants.** You shall not sell, transfer or assign any material portion of Your assets; allow a controlling interest in Borrower to be sold, transferred or assigned to any person(s) or entity(ies) other than those who hold a controlling interest as of the date hereof, whether by merger, sale or otherwise; allow a Blocked Person to have an ownership interest in or control of Borrower; enter into any merger or reorganization in which You are not the surviving entity; or unless You shall have given Us not less than thirty (30) days' prior written notice change (i) Your name or business address from that set forth above, and, if an individual, Your state of residence, (ii) the state under whose laws You are organized as of the date hereof, or (iii) the type of organization under which You exist as of the date hereof.

(B) Authorized Signer Covenant. The signer(s) who execute this CFA and any other ancillary documents are duly authorized by Borrower and should any signer(s) later be found to be unable to bind Borrower, said signer(s) shall be personally liable for any obligations incurred under the CFA and any ancillary documents, in addition to the liability of the Borrower.

(C) Co-Borrower Covenants. If there is more than one Borrower executing this CFA, each undersigned Borrower shall be designated as Borrower hereunder and all documents executed in connection herewith. Each Borrower agrees: (i) all obligations shall be joint and several and each Borrower shall be individually responsible for fulfilling all obligations of Borrower hereunder; (ii) any Default by any Borrower shall be a Default by each other Borrower; (iii) the mutual understanding reached by each Borrower in this regard is consideration for each Borrower's execution hereto; (iv) each Borrower will receive the benefit of the financing made hereunder and We would not otherwise enter into or provide financing under any Agreement without each Borrower's execution; and (v) We shall be entitled to pursue all rights and remedies hereunder against each Borrower upon any Default by any Borrower. All representations, covenants, agreements and obligations imposed on each Borrower shall be binding on

each other Borrower and the act of any Borrower shall bind all other Borrowers and We shall be authorized to rely, without investigation, on the authority of any Borrower to give any notice, grant any consent and Our notice to one Borrower shall suffice as notice to all Borrowers. Each Borrower's obligations shall not be affected by any action taken or not taken by Us against any other Borrower, Guarantor(s) or the Collateral for any reason whatsoever, including: (i) any action by any Borrower, (ii) any exercise or non-exercise of any right or remedy against any Borrower, (iii) any voluntary or involuntary bankruptcy, insolvency, reorganization or similar proceeding by any other Borrower.

**21. Consent to Jurisdiction and Venue:** You hereby consent to the jurisdiction of any local, state, or federal court located within the State of Illinois and waive any objection based on improper venue or forum non conveniens to the conduct of any action or proceeding in any such court. You further waive formal service of process and consent that all service of process may be made by mail or messenger directed to You at the address above and that service so made shall be deemed to be completed upon the earlier of actual receipt, or three (3) days after service of process addressed to You at Your address set forth above is deposited in the mail or one (1) day after service of process is delivered to a messenger or overnight courier service for delivery to You. You acknowledge that you have an option to consult with counsel of your choice regarding this CFA and that it shall not be construed against either of us by reason of draftsmanship.

**22. GOVERNING LAW:** THE AGREEMENT SHALL BE CONSTRUED IN ALL RESPECTS IN ACCORDANCE WITH, AND GOVERNED BY THE INTERNAL LAWS (AS OPPOSED TO THE CONFLICTS OF LAW PROVISIONS) OF THE STATE OF ILLINOIS, EXCEPT THAT QUESTIONS AS TO PERFECTION OF OUR SECURITY INTEREST AND THE EFFECT OF PERFECTION OR NON-PERFECTION SHALL BE GOVERNED BY THE LAW WHICH WOULD BE APPLICABLE EXCEPT FOR THIS SECTION.

**23. JURY WAIVER:** TO THE EXTENT PERMITTED BY APPLICABLE LAW, THE PARTIES HERETO EACH WAIVE ANY RIGHT TO A TRIAL BY JURY ON ANY CLAIM, DEMAND, ACTION, CAUSE OF ACTION OR COUNTERCLAIM ARISING UNDER OR IN ANY WAY RELATED TO THIS AGREEMENT.

**24. Limitation of Remedies and Damages:** You agree that in the event there is any dispute relating to or arising in connection with the CFA, You shall not be entitled to indirect, special, punitive or consequential damages in connection with any action arising under or in any way related to this CFA.

**25. Notices:** The parties to this CFA agree that any notices shall be in writing and delivered personally or by U.S. mail, certified mail or overnight mail or by a nationally-recognized courier services to Borrower's address as set forth above and to Creditor's address as set forth below the signature lines of this CFA, or at such other address designated by either party in writing.

**26. Miscellaneous:** You hereby acknowledge that You and any Guarantor have authorized the Dealer, Us, Our subsidiaries or affiliated companies, funding sources and Our successors, assigns and designees to investigate and share Your creditworthiness and credit capacity in connection with the establishment, maintenance and collection of Your account and to furnish information concerning Your account, including insurance information to credit reporting agencies, Our assignees and others who may lawfully receive such information. You agree, within forty-five (45) days after the end of each fiscal quarter other than the final fiscal quarter of each fiscal year, to deliver to Us a balance sheet and statement of income at the end of such quarter, each setting forth in comparative form the corresponding figures for the comparable period in the preceding fiscal year and, within one hundred and twenty (120) days after the end of each fiscal year, to deliver to Us a balance sheet as at the end of such year and statements of income and cash flows for such year, with accompanying notes to financial statements, each setting forth in comparative form the corresponding figures for the preceding year, in each case prepared in accordance with generally accepted accounting principles and practices consistently applied and certified by Your chief financial officer as fairly presenting Your financial position and results of operations, and, in the case of year-end financial statements, certified by an independent accounting firm acceptable to Us; and with reasonable promptness, furnish Us with such other information, financial or otherwise, relating to You or the Collateral as We shall reasonably request. You agree that no course of dealing or delay or failure to enforce Our rights under this CFA shall prevent Us from enforcing any of Our rights hereunder or under any addendums. If You fail to make any payment or take any action as and when required by law or by this CFA, We may do so in Your or Our name, without waiving any default, and You will reimburse Us on demand, together with interest at the lower of 18% or the highest amount permitted by law. You agree that the terms and conditions reflected in this CFA

or any attachments hereto are a complete and exclusive statement of this CFA. Notwithstanding the foregoing, to the extent there are errors or omissions in the information contained in this CFA and/or any attachment to this CFA, We may by written notice to You correct such errors or omissions. You agree that this CFA will be binding upon Your successors and assigns. You agree that Our waiver of any provision hereunder must be in writing and shall not constitute a waiver of any other matter. Any changes to the terms and conditions of this CFA must be in writing and agreed to and signed by Us. It is the express intent of the parties not to violate any applicable usury laws or to exceed the maximum amount of interest permitted to be charged or collected by applicable law, and any such excess payment will be applied to the payments in inverse order of maturity, and any remaining excess will be refunded to You. You authorize Us to contact You via Your home or business telephone number, e-mail, cell phone or fax number. You authorize Us, at our discretion, to install, at Your expense, a tracking device in the Collateral so that we may monitor the Collateral and in the event of default located and secure the Collateral. Any provision or clause hereof or any remedy herein provided found to be invalid or unenforceable in any jurisdiction under any applicable law shall be inapplicable to the extent of such unenforceability or invalidity, but the remaining provisions hereof shall be given effect in accordance with the manifest intent hereof, and any such invalidity or unenforceability in any jurisdiction shall not render unenforceable or invalid such provision in any other jurisdiction. You will promptly execute and deliver to Us such further documents, take such further action and provide such information as We may request in order to carry out more effectively the intent and purpose of this CFA, and/or comply with laws or regulations applicable to Us, You, and/or the transaction evidenced by this CFA, including information identifying the owners of Borrower and its affiliates and their respective ownership interests. At any time, We and any assignee of Ours is authorized to file one or more UCC financing statements without Your signature.

**27. Irrevocable Limited Power of Attorney:** You hereby irrevocably appoint Us and/or Our successors and assigns your true and lawful Attorney-in-Fact coupled with an interest with full authority and power to do and perform all and every act and thing whatsoever requisite and necessary to be done, as fully, to all intents and purposes as You might or could do if personally present, with full power of substitution and revocation, to complete, sign, execute, any instrument related to a loss settlement, an insurance check or authorize the application of warranty or insurance proceeds, file and deliver any title, Collateral registration or certificate of ownership, recording of liens, fixture filings, UCC financing statement(s), and to sell, record interest, transfer or otherwise dispose of the Collateral, whether in bulk or in parcel, whether or not the Collateral is present at such sale and with or without notice, at public or private sale. We and/or Our successors or assigns may apply the proceeds from any such sale or other disposition against any and all of Your obligations to Us and/or Our assigns. If Your signature on any financing statement is required by law, You shall execute such supplemental instruments and financing statements We deem to be necessary and advisable and shall otherwise cooperate to defend Our interest in the Collateral by filing or otherwise. You also agree to pay Us on demand filing, registration and releasing fees prescribed by the UCC or other law. Further, to the extent warranty or insurance premium(s) is/are financed hereunder, and in the event of a default under this CFA, You irrevocably appoint Us as Attorney-In-Fact, with full authority to (a) cancel any warranty or insurance policy(ies) in accordance with the provisions herein, (b) receive all refunds, rebates or sums due under said warranty or insurance policy(ies) and (c) execute and deliver on Your behalf all documents, forms and notices relating to the warranty or insurance policy(ies) hereunder.

**28. Electronic Payment:** By completing the information below, You hereby authorize and request Us to initiate scheduled or periodic electronic fund transfer debits (and credit entries and adjustments for any debit entries in error) or affect a charge by any other commercially accepted practice to the account indicated below in the financial institution named below. You hereby authorize and request said financial institution to honor the debit and/or credit entries initiated by Us. This authorization is for Installment Payments and any open charges or fees, including but not limited to late charges, non-sufficient funds (NSF) charges, insurance charges, or any charges or fees related to title or taxes due and outstanding under this CFA. This authority is to remain in force until such time as all amounts due are paid in full or until We and financial institution have received written notification from You terminating this authorization in such time and manner as to afford Us and financial institution a reasonable opportunity to act on it. You agree that Your bank account information may be disclosed and authorize assignment pursuant to Section 18 herein.

| X | If the box is checked, You are required to make Your payments via Electronic Payment as a condition of this CFA.<br>**PLEASE PROVIDE US WITH YOUR BANK OR SAVINGS INSTITUTION'S INFORMATION REQUESTED BELOW<br>OR ATTACH A VOIDED CHECK.** |
|---|---|

| Name of Account Holder: | *Inland Transportation, Ltd.* | ☒ Business Account<br>☐ Personal Account | ☐ Checking Account<br>☐ Savings Account |
|---|---|---|---|
| Bank Name and Branch: | ▓▓▓▓▓▓▓ | Account Number: | ▓▓▓▓▓▓▓ |
| Address (city & state): | *Naperville, Illinois* | | |
| Telephone Number: | ▓▓▓▓▓▓▓ | Routing Number: | ▓ |

| ☐ | I am a current customer of Creditor and have bank information currently on file. By checking the box, You hereby authorize and request Creditor to utilize Your bank information on file to process Your payment electronically pursuant to Section 28 above. |
|---|---|

**29. ELECTRONIC SIGNATURE:** Creditor and Borrower may elect to execute this CFA via electronic signature. If this CFA is executed via electronic signature, You and we agree that the electronic version of this CFA which has been authenticated by you and us in accordance with applicable law and controlled by us (or our assignee) shall (pursuant to the rules and regulations of DocuSign and eOriginal, Inc.) constitute the original authoritative version of this CFA; provided that if the "Paper Out" process shall have occurred pursuant to the eOriginal Product Reference Guide, and there shall simultaneously exist both the "Paper Out" printed version and an electronic version of this CFA, then the "Paper Out" printed version of this CFA as identified in the eOriginal audit record and corresponding affidavit shall constitute the sole authoritative version. You also agree that by typing Your name in the boxes indicated below or any other electronic method of affixing Your signature, either in Your individual capacity or as an authorized representative of the Borrower, You are confirming that You are the person so indicated in the box below, and that You are providing Your electronic signature on this CFA. Your electronic signature shall evidence Your agreement to be bound by and authenticate this electronic record and attest to the statements contained in this CFA with the same effect as if You had manually signed this CFA. This CFA and any related electronic documents are electronic records that may be transferred, authenticated, stored and transmitted by electronic means. You agree to keep any security code or password secured and will not inappropriately disclose this information to others. You also confirm that all documentation related to this transaction delivered or executed using Your email address, login, security code and/or password are true and correct.

**YOU ACKNOWLEDGE THAT YOU HAVE READ AND ACCEPT THE TERMS OF THIS AGREEMENT, AMENDMENT, EXHIBIT, RIDER, AND SCHEDULE. FURTHER, YOU ACKNOWLEDGE THAT YOU HAVE RECEIVED AND ACCEPTED THE COLLATERAL, REQUEST THAT WE ACCEPT THIS AGREEMENT AND PAY THE DEALER FOR INVOICE(S) RELATED TO THE ABOVE-REFERENCED COLLATERAL. THIS AGREEMENT SHALL NOT BE A VALID CONTRACT UNTIL ACCEPTED BY CREDITOR. BORROWER(S) HEREBY WAIVES NOTICE BY CREDITOR OF ITS ACCEPTANCE OF THIS AGREEMENT.**

**BORROWER:**     **INLAND TRANSPORTATION LTD.**

Signature:    X _(signature)_           [PLEASE SIGN USING BLUE INK]

Name:    **ULUGBEK F KUCHKAROV**

Title:    **PRESIDENT**

Cell Phone:    ▓▓▓▓▓▓▓      [REQUIRED – PLEASE COMPLETE]

Email Address:    ▓▓▓▓▓▓▓

Billing Address:    ▓▓▓▓▓▓▓

**AGREED TO AND ACCEPTED:**

**ENGS COMMERCIAL FINANCE CO. ("CREDITOR")**

By: _(signature)_

Print Name: **Ross Reynolds**

Title:    **SR. VICE PRESIDENT - OPERATIONS**<br>~~Vice President - Operations~~       (DB)

Address for Notice<br>P.O. Box 128<br>Itasca, IL 60143-0128

## CERTIFIED RESOLUTION OF BUSINESS ENTITY

The undersigned secretary/authorized signer of **INLAND TRANSPORTATION LTD.** ("Business Entity") does hereby certify that the following is a true and correct copy of resolutions duly adopted by the governing body of the Business Entity and that said resolutions are now in full force and effect.

**RESOLVED** that any one of the officers, general partners, members, managers or agents (hereinafter individually referred to as an "Authorized Person and collectively, as the, "Authorized Persons") listed below is authorized to take the following actions in the name of and on behalf of the Business Entity.

i)     To lease or finance through Engs Commercial Finance Co. ("Lessor"/"Creditor") such equipment or other personal property on such terms as said Authorized Persons deem advisable and in the best interest of the Business Entity from time to time and the execution of any lease or finance agreement by any one of said Authorized Persons shall be conclusive evidence of his/her approval thereof.

ii)     To sign and deliver all leases, finance agreements and related documents, including any notes or other evidences of indebtedness, as may be requested by the Lessor/Creditor from time to time.

iii)     To pledge as collateral security for the performance of the obligations of the Business Entity to the Lessor/Creditor, such assets of the Business Entity as may be required and agreed upon between the Authorized Person and the Lessor/Creditor.

**RESOLVED FURTHER** that each one of the Authorized Persons listed below is conferred with a general authority to deal on behalf of and in the name of the Business Entity with the Lessor/Creditor.

**RESOLVED FURTHER** that this resolution shall continue in force until notice in writing of its revocation shall be given to and received by the Lessor/Creditor at P.O. Box 128, Itasca, IL 60143-0128 by certified mail, return receipt requested and notwithstanding the giving of such notice, this resolution shall be effective as to all agreements entered into prior to Lessor/Creditor's receipt of such notice.

**RESOLVED FURTHER** that the secretary/authorized recorder of the Business Entity be and hereby is authorized to furnish this certificate of authority to the Lessor/Creditor and that a copy of this certificate shall be conclusive evidence of the authority of the Authorized Persons to deal with the Lessor/Creditor on behalf of the Business Entity.

The undersigned further certifies that the following are the true and correct signatures and designations of the Authorized Person(s) referred to below:

| Authorized Persons | Titles | Signatures |
|---|---|---|
| ULUGBEK F KUCHKAROV | PRESIDENT | X |
|  |  | X |

Type of Business Entity:  IL – Corporation

Date:  September 2, 2020

Signature:     X

Print Name:     ULUGBEK   KUCHKAROV

Print Title:     **SECRETARY**

Authorized Signer:     (Corporation - Secretary, Limited Liability Company - all Member(s), General Partnership - all Partner(s), etc. or as dictated by – officer/owner(s) authorized to confirm signer authority)

# EXHIBIT 4



**ENGS**

## PERSONAL GUARANTY
#### Contract # 108840

In consideration of **ENGS COMMERCIAL FINANCE CO.** (referred to as "Creditor/Lessor"), its successors and assigns, providing any present or future financing of any nature to **INLAND TRANSPORTATION LTD.** (referred to as "Borrower/Lessee"), the party(ies), entity(ies) or individual(s) executing this Guaranty ("Guarantor(s)"), jointly, or severally if more than one, absolutely, unconditionally and irrevocably guarantee to Creditor/Lessor, the payment and performance of any and all debt, liability and obligation of Borrower/Lessee to Creditor/Lessor (the "Obligations"), from time to time entered into, including but not limited to Borrower/Lessee's Obligations under any working capital -- promissory note and security agreement, promissory note, security agreement, commercial finance agreement, commercial lease agreement, and any rider, amendment, addendum thereto and all other agreements (collectively, "Contracts") from time to time entered into between Creditor/Lessor and Borrower/Lessee. Creditor/Lessor may at its option, proceed at once and directly, without notice, against Guarantor(s) to collect and recover the full amount guaranteed or any portion of that amount, without proceeding against Borrower/Lessee or any other person or entity, or exercising any other remedy available to Creditor/Lessor. Guarantor(s) waives all defenses and notices, including those of acceptance hereof by Creditor/Lessor and of the creation and existence of Obligations; protest, presentment and demand; and any and all defenses otherwise available to a guarantor, surety or accommodation party. Guarantor(s) agrees that Creditor/Lessor may amend, renew, extend or otherwise modify any Obligations without affecting or impairing in any way the liability of Guarantor(s) hereunder. If any one or more Borrower/Lessee(s) is a corporation, limited liability company or partnership, it is not necessary for Creditor/Lessor to inquire into the powers of Borrower/Lessee or the officers, directors, partners, members or agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed and be an Obligation hereunder. Guarantor(s) will pay to Creditor/Lessor all expenses (including attorneys' fees) incurred by Creditor/Lessor in enforcing Creditor/Lessor's rights against Borrower/Lessee and Guarantor(s). This Guaranty will not be discharged or affected by the death, dissolution, termination, bankruptcy or insolvency of Borrower/Lessee, and will bind Guarantor(s) heirs, personal representatives, successors and assigns. Guarantor(s) authorizes Creditor/Lessor or any of Creditor/Lessor's designees to obtain, and share with others, credit bureau reports regarding Guarantor(s)'s personal credit, and make other credit inquiries that Creditor/Lessor determines are necessary. Guarantor(s) acknowledge that this Guaranty is the entire agreement with Creditor/Lessor pertaining to its guaranty of the obligations described herein and it cannot be changed except with advance written consent of Creditor/Lessor. Guarantor(s) agree that any failure or delay by Creditor/Lessor to enforce its rights and remedies under this Guaranty does not prevent Creditor/Lessor from enforcing such rights or remedies at some future point in time. A photocopy, .pdf copy or facsimile of this Guaranty will be legally admissible under the "best evidence rule." A signed copy of this Guaranty and/or any related document sent by facsimile or by email attachment in .pdf format shall be treated as an original document and shall be admissible as evidence, and all signatures shall be binding as if manual signatures were personally delivered. If any payment applied to any Obligation is thereafter set aside, recovered, rescinded or required to be returned for any reason (including on account of a preference in the bankruptcy of any Borrower/Lessee), the Obligation to which such payment was applied shall for the purposes of this Guaranty be deemed to have continued in existence notwithstanding such application, and this Guaranty shall be enforceable as to such Obligation as fully as if such application had never been made. Guarantor(s) will promptly execute and deliver to Creditor/Lessor such further documents, and take such further action and provide such information as Creditor/Lessor may request in order to carry out more effectively the intent and purpose of this Guaranty, and or comply with laws or regulations applicable to Guarantor(s), Creditor/Lessor, and/or the transaction evidenced by this Guaranty, including information identifying the owners of Guarantor(s) and its affiliates and their respective ownership interests. Guarantor(s) hereby state that no assets are held in trust.

Creditor/Lessor may, without notice to or the consent of Guarantor(s), assign this Guaranty as it relates to an Obligation to a party who purchases all or part of the Obligations (hereinafter referred to individually as an "Assignee" and collectively as "Assignees"). An Assignee shall have the right to enforce this Guaranty against Guarantor(s) solely as it relates to the Obligation it purchased, and such enforcement may be brought separate and apart from actions by Creditor/Lessor and/or other Assignees. Guarantor(s) agrees that it shall, upon a request from Creditor/Lessor, promptly provide to Creditor/Lessor a copy of Guarantors' most recent annual financial statements and any other financial information of Guarantor(s) (including interim financial statements) that Creditor may request. Guarantor(s) authorizes Creditor to share such information with Creditor's affiliates, subsidiaries, and Assignees, and with any Dealer noted in any Contract guaranteed hereby. Guarantor(s) certify that the financial information provided to Creditor/Lessor is true, complete and accurate in all material respects. Guarantor(s) will not permit the sale or transfer of a majority of its ownership interests to any person or entity and Guarantor(s) will not consolidate or merge with or sell or transfer all or substantially all of its assets to, any person or entity, or allow a Blocked Person to have an ownership interest in or control of Guarantor(s). "Blocked Person" means any person or entity that is now or at any time (A) on a list of Specially Designated Nationals issued by the Office of Foreign Assets Control ("OFAC") of the United States Department of the Treasury or any sectoral sanctions identification list, or (B) whose property or interests in property are blocked by OFAC or who is subject to sanctions imposed by law, including any executive order of any branch or department of the United States government or (C) otherwise designated by the United States or any regulator having jurisdiction or regulatory oversight over Creditor/Lessor or its financing source, to be a person with whom Creditor is not permitted to extend credit to or with regard to whom, a guarantor relationship may result in penalties against Guarantor(s) or limitations on a creditor's ability to enforce a transaction.

Guarantor(s) acknowledges that Creditor/Lessor is relying on this Guaranty in providing financing to Borrower/Lessee.

**THIS GUARANTY SHALL BE CONSTRUED IN ALL RESPECTS IN ACCORDANCE WITH, AND GOVERNED BY THE INTERNAL LAWS (AS OPPOSED TO THE CONFLICTS OF LAW PROVISIONS) OF THE STATE OF ILLINOIS. GUARANTOR(S) HEREBY CONSENTS TO THE JURISDICTION OF ANY LOCAL, STATE, OR FEDERAL COURT LOCATED WITHIN THE STATE OF ILLINOIS AND WAIVES ANY OBJECTION BASED ON IMPROPER VENUE OR FORUM NON CONVENIENS. GUARANTOR(S) ACKNOWLEDGES THAT SUCH GUARANTOR(S) HAS AN OPTION TO CONSULT WITH COUNSEL OF ITS CHOICE REGARDING THIS GUARANTY AND THAT IT SHALL NOT BE CONSTRUED AGAINST OTHER OF US BY REASON OF DRAFTSMANSHIP. TO THE EXTENT PERMITTED BY APPLICABLE LAW, THE PARTIES HERETO EACH WAIVE ANY RIGHT TO A TRIAL BY JURY ON ANY CLAIM, DEMAND, ACTION, CAUSE OF ACTION OR COUNTERCLAIM ARISING UNDER OR IN ANY WAY RELATED TO THIS GUARANTY, AND UNDER ANY THEORY OF LAW OR EQUITY, WHETHER NOW EXISTING OR HEREAFTER ARISING.**

Creditor/Lessor and Guarantor(s) may elect to execute this Guaranty via electronic signature. If this Guaranty is executed via electronic signature, Guarantor(s) and Creditor/Lessor agree that the electronic version of this Guaranty which has been authenticated by Guarantor and Creditor/Lessor in accordance with applicable law and controlled by Creditor/Lessor (or our assignee) shall (pursuant to the rules and regulations of DocuSign, Inc. and eOriginal, Inc.) constitute the original authoritative version of this Guaranty; provided that if the "Paper Out" process shall have occurred pursuant to the eOriginal Product Reference Guide, and there shall simultaneously exist both the "Paper Out" printed version and an electronic version of this Guaranty, then the "Paper Out" printed version of this Guaranty as identified in the eOriginal audit record and corresponding affidavit shall constitute the sole authoritative version. Guarantor(s) also agrees that by typing his/her name in the boxes indicated below or any other electronic method of affixing your signature, Guarantor(s) confirms that he/she is the person so indicated in the box below, and that he/she is providing an electronic signature on this Guaranty. Guarantor's electronic signature shall evidence his/her agreement to be bound by and authenticate this electronic record and attest to the statements contained in this Guaranty with the same effect as if Guarantor(s) had manually signed this Guaranty. This Guaranty and any related electronic documents are electronic records that may be transferred, authenticated, stored and transmitted by electronic means. Guarantor(s) agrees to keep any security code or password secured and will not inappropriately disclose this information to others. Guarantor(s) also confirms that all documentation related to this transaction delivered or executed using his/her email address, login, security code and/or password are true and correct.

Date: September 2, 2020

**GUARANTOR: ULUGBEK F KUCHKAROV**

Signature: X ⬛⬛⬛⬛⬛⬛  [PLEASE SIGN USING BLUE INK]

Address: ⬛⬛⬛⬛⬛⬛⬛

Email: ⬛⬛⬛⬛⬛⬛⬛

*PLEASE REVIEW AND PROVIDE UPDATED INFORMATION*     Address for Notice: P.O. Box 126, Itasca, IL 60143-0126     Page 1 of 1

(CMT-00390) PG (Rev 07-08-20)

# EXHIBIT 5



MITSUBISHI HC CAPITAL
AMERICA

One Pierce Place
Suite 1100
Itasca, IL  60143

March 11, 2024

12/36/001

Ulugbek Kuchkarov
President & Guarantor
Inland Transportation Ltd.
3832 Rosada Drive
Naperville, IL  60564

Dear Ulugbek Kuchkarov:

Reference is made to Commercial Finance Agreement #106640 dated September 2, 2020 (the "Agreement") between **Engs Commercial Finance Co.** ("Creditor"), and **Inland Transportation Ltd.** ("Borrower").

Creditor hereby notifies Borrower that Creditor has assigned all of its right, title and interest in and to the Agreement (including the Equipment subject thereto), and all other riders, amendments and other attachments thereto, and all guaranties thereof, if any, to **Flagstar Financial & Leasing LLC** ("Flagstar"), effective as of March 24, 2021.  You are hereby directed to continue to make all future payments and other amounts due under the Agreement to Flagstar at the following address:

Flagstar Financial & Financial LLC
100 Duffy Ave, Suite 402
Hicksville, NY  11801

Please direct your insurance carrier to change the additional insured and loss payee with respect to all insurance required by the Agreement to Flagstar Financial & Leasing, LLC and have a copy of your updated certificate of insurance confirming liability and property coverage forwarded to David McGowan at dmcgowan@signatureny.com.

If you have questions regarding this notification, please contact David McGowan at 631-861-2690.

**Mitsubishi HC Capital America, Inc.
successor by merger to Engs Commercial
Finance Co.**

By:  *Brian Kancius*

Name:  Brian Kancius

Its:  Director, Capital Markets

**Flagstar Financial & Leasing LLC**

By:  _____

Name:  David McGowan

Its:  VP Director of Portfolio Management


MITSUBISHI HC CAPITAL
AMERICA

**One Pierce Place**
**Suite 1100**
**Itasca, IL  60143**

March 13, 2024

Ulugbek Kuchkarov
President & Guarantor
Inland Transportation Ltd.
3832 Rosada Drive
Naperville, IL  60564

Dear Ulugbek Kuchkarov:

Reference is made to Commercial Finance Agreement #93957 dated January 29, 2020 (the "Agreement") between **Engs Commercial Finance Co.** ("Creditor"), and **Inland Transportation Ltd.** ("Borrower").

Creditor hereby notifies Borrower that Creditor has assigned all of its right, title and interest in and to the Agreement (including the Equipment subject thereto), and all other riders, amendments and other attachments thereto, and all guaranties thereof, if any, to **Flagstar Financial & Leasing LLC** ("Flagstar"), effective as of March 24, 2021.  You are hereby directed to continue to make all future payments and other amounts due under the Agreement to Flagstar at the following address:

Flagstar Financial & Financial LLC
100 Duffy Ave, Suite 402
Hicksville, NY  11801

Please direct your insurance carrier to change the additional insured and loss payee with respect to all insurance required by the Agreement to Flagstar Financial & Leasing, LLC and have a copy of your updated certificate of insurance confirming liability and property coverage forwarded to David McGowan at dmcgowan@signatureny.com.

If you have questions regarding this notification, please contact David McGowan at 631-861-2690.

**Mitsubishi HC Capital America, Inc.**
**successor by merger to Engs Commercial**
**Finance Co.**

By:  *Brian Kancius*

Name:  Brian Kancius

Its:    Director, Capital Markets

**Flagstar Financial & Leasing LLC**

By:  *David McGowan*

Name:  David McGowan

Its:    VP Director of Portfolio Management